## DALZELL v. STATE.

CRIMINAL LAW — LARCENY — CORPUS DELICTI — EVIDENCE — INSTRUCTIONS.

1. In larceny it is necessary that the *corpus delicti* should be established, as it is clearly not permissible that any one should be adjudged guilty of larceny, until it is shown that a larceny has been committed.

2. In larceny, the *corpus delicti* is constituted of two elements — that the property was lost by the owner, and that it was lost by a felonious taking; as in homicide, it is constituted of two elements — that the alleged victim is dead, and that the death was accomplished by felonious means.

3. The evidence relied upon to establish the *corpus delicti* in larceny is not necessarily, or usually, distinct from that relied upon to prove the offender and prove the guilty intent.

4. The loss of and subsequent finding of the property, does not prove, or in many cases tend to prove, the *corpus delicti* — that it was lost by a larceny. But the loss and even imperfect identification of it in the possession of the accused, together with incriminating circumstances of misstatement and concealment, may, as in the case at bar, not only identify the guilty person, but satisfactorily establish the *corpus delicti.*

5. Upon the evidence in this case, *held*, that upon the question of *corpus delicti*, it was direct and not circumstantial; and that it furnished ample proof of the guilt of defendant, to produce conviction in the minds of the jury beyond a reasonable doubt.

6. It is not necessary that a jury shall be informed as to the whole scope of their duties in each instruction.

7. The competency of the evidence is not a question for the jury, but is for the court.

8. An instruction in a criminal case that "every person charged with crime is presumed to be innocent until his guilt has been established beyond a reasonable doubt" is not erroneous for an omission to add to the instruction that the guilt must be established by "competent evidence," or equivalent words; where the record does not show the admission of any but relevant and material evidence, proper to go to a jury, and in other instructions, the jury were informed that the State was required to prove all material allegations beyond a

reasonable doubt, and what such allegations were, and the nature of a reasonable doubt.

[Decided June 1, 1898.   Information filed in district court, April 7, 1897.]

ERROR to the District Court for Johnson County. Hon. JOSEPH L. STOTTS, Judge.

H. J. Dalzell, was informed against in the district court for Johnson County, for the larceny of one head of neat cattle, of the value of five dollars and upwards, was convicted and sentenced to two years' imprisonment in the penitentiary. He prosecuted error. The facts are stated in the opinion.

*W. S. Metz* and *E. E. Lonabaugh*, for plaintiff in error.

It is elementary that in all criminal cases proof of the *corpus delicti* must be made. There is no proof that the prosecuting witness ever lost an animal by theft, either by plaintiff in error or by any other person. (1 Whart. Cr. L., Sec. 745; Ruloff v. People, 18 N. Y.; U. S. v. Searcy, 26 Fed., 435; State v. Keeler, 28 Ia., 551; Taylor v. State, 35 Tex., 97; Smith's case, 21 Gratt., 809; Stocking v. State, 7 Ind., 326.) The instructions were erroneous for failing to inform the jury that the guilt must be established by the *evidence in the case.*

*J. A. Van Orsdel*, Attorney-General, for the State.

There is no question in this case but that one head of neat cattle was killed at the time and place alleged in the information. The question at issue is as to the identification of the animal. Such identification may be established by circumstantial evidence; and upon the evidence the jury was authorized to find that the animal killed was the one in question belonging to the one named in the information as owner. The instructions taken together sufficiently informed the jury that the defendant's guilt

must be established by the evidence in the case. (3 Greenleaf, 31.)

CORN, JUSTICE.

The plaintiff in error was found guilty by a jury upon an information charging him with the larceny of one head of neat cattle, the property of Hulda E. Williams, and sentenced to the penitentiary for the term of two years.

The plaintiff in error contends that it does not appear from the evidence that any crime has been committed, either by defendant (plaintiff in error) or any other person; that proof of the *corpus delicti* is wholly lacking; that there is no proof that the prosecuting witness ever lost an animal by the theft of the defendant or any other person, and that there is no proof that the animal claimed to be killed was the property of the prosecuting witness.

The evidence shows that the prosecuting witness owned a steer which ranged in the vicinity of defendant's ranch, and which bore her brand, " J. F.," on the left ribs, and a cross on the left hip; also her ear-mark which is described as " a half under crop on the left ear." That about the first of December, 1896, her foreman searched for this animal for two days upon its accustomed range, and was unable to find it, and it was not afterward found. About the third of December some of the witnesses found where a steer had been killed about half to three quarters of a mile from the ranch of the defendant, the head, a part of the hide, and some other parts of the animal remaining upon the ground partially covered with snow. The part of the hide where the brand of the prosecuting witness was accustomed to be put on was absent, a strip running the full length of the hide having been cut out. The left ear and the horns were cut off. The ear was found and showed that it had been cut off close to the head and also that a piece of the ear had been freshly cut off. The foreman testified that the head and hide " corresponded " with the missing animal, but that he could not state positively that it was the same, the brand being absent. The

defendant upon being informed that an animal had been killed there, said he killed it himself, and that it was a cow of his own; that he had cut the hide, having occasion to use a piece of it; that he had also sawed off the horns so that he could handle the animal more conveniently, but that he had not cut off the ear. There was testimony also that the part of the hide cut out was not the part where the brand of the defendant was usually placed. There were many other circumstances tending with greater or less directness to prove the guilt of the defendant, which it is now unnecessary to rehearse.

The specific objection most relied upon by plaintiff in error is that the *corpus delicti* is not proven. The necessity for satisfactory proof of the *corpus delicti* has been most dwelt upon in homicide cases for obvious reasons, and eminent judges have held that they would not permit a verdict to stand without direct proof of the death as by the finding and identification of the body, or of criminal violence adequate to produce death, and exerted in such a manner as to account for the disappearance of the body. The necessity for the greatest care in this regard is emphasized by the fact that convictions and executions have occurred, and the supposed victim of the homicide has afterward appeared alive. At the same time the number of cases is no doubt much greater, where after conclusive proof of the murder punishment has been inflicted upon the wrong person, entirely innocent of the crime. The injustice is not greater in the one case than the other. And the degree of certainty required is the same in both cases, or upon both branches of the case; that is, the proof must be beyond reasonable doubt. The distinction is as to the character of evidence which is deemed necessary and sufficient to establish the *corpus delicti*. In larceny it is also of course necessary that the *corpus delicti* should be established, as it is clearly not permissible that any one should be adjudged guilty of larceny until it is shown that a larceny has been committed. The *corpus delicti* in homicide is constituted of two elements; that

the alleged victim is dead, and that the death was accomplished by felonious means. In larceny it is also constituted of two elements; that the property was lost by the owner, and that it was lost by a felonious taking.

Without going more minutely into the distinctions as to the character or amount of the evidence required to establish the *corpus delicti* upon the one hand, or the identity of the guilty person upon the other, it seems clear that the evidence relied upon in this case to establish the *corpus delicti* is not circumstantial, but direct. The animal was searched for upon the accustomed range and could not be found, and the evidence seems to be complete and satisfactory that it had disappeared from its range. There is also the testimony of the foreman that the remains of the animal killed " corresponded " with the one that was missed, and tending to identify it as the same. That the animal was missing, and that certain remains were found corresponding in description with the lost animal, was direct evidence tending to prove the *corpus delicti*. Whether it was sufficient or not is a different question.

But the evidence relied upon to establish the *corpus delicti* in larceny is not necessarily, or indeed usually, distinct from that relied upon to identify the offender and prove the guilty intent. The defendant claimed to have killed a cow. The remains were those of a steer. The part of the hide which would bear the brand of the prosecutor was cut out, and it was not the part where the brand of the defendant should have been. When questioned as to why he cut away the part which bore the brand, his only explanation was that he did not think of it at all,— an explanation reasonable enough from one unfamiliar with the cattle business, but unreasonable from one engaged in stock raising, and himself owning a brand. The remains found indicated the age of the animal killed to be about the same as that of the one belonging to the prosecutor. The quarters of beef sold by

defendant were shown to be heavier than the quarters of an average cow of the age indicated, but about the weight of an average steer of that age. After suspicion was directed toward the defendant, he endeavored to secure the bones from the parts of the animal he had sold, requesting the purchasers not to mention the circumstance. There is the testimony of one witness that defendant requested him to assist in butchering a cow, saying that he wanted the hide for his protection against this prosecution. There were also circumstances indicating that the defendant attempted to use manufactured evidence in his defense. As for instance, the testimony of his brother, there being strong proof that the brother had stated at other times that he was not in the vicinity at the time the animal was killed, but was absent in the mountains. There was a great deal of evidence, and we only rehearse sufficient to characterize it. Passing upon it as a whole we are of the opinion that it furnishes ample proof of the guilt of the defendant to produce conviction in the minds of the jury beyond reasonable doubt.

In homicide the *corpus delicti* is usually susceptible of proof independent of and separable from that by which the identity of the guilty person and the felonious intent are established; as by the finding of the body with mortal wounds upon it, under circumstances which preclude the possibility of self-destruction or accident. This is not true of the proof in larceny. The loss of and subsequent finding of the property does not prove, or in many cases tend to prove, the *corpus delicti;* that it was lost by a larceny. But the loss and even imperfect identification of it in the possession of the accused, together with incriminating circumstances of misstatement and concealment may, as in this case, not only identify the guilty person, but satisfactorily establish the *corpus delicti.* Indeed, we think the substantial question presented by the plaintiff in error upon this record is not the absence of proof of the *corpus delicti*, but the sufficiency of the evidence to sus-

tain the verdict.   And the jury having passed upon the
credibility of the witnesses, we have no question that it is
sufficient.

The only other errors alleged have reference to certain
omissions of the court in its charge to the jury.   The
court charged that "Every person charged with crime is
presumed to be innocent until his guilt has been estab-
lished beyond a reasonable doubt."   And it is urged that
the failure of the court to insert in this and similar instruc-
tions the statement that such guilt must be established by
"competent evidence," or equivalent words, was mislead-
ing and left the jury to indulge presumptions against the
defendant not warranted by the evidence.   It is of course
true that the guilt of the defendant can be established
lawfully only by competent evidence, and if anything in
the progress of the trial or the circumstances of the case
should cause it to appear necessary that the attention of
the jury should be particularly called to this principle, or
the defendant should request that the jury be specially
instructed in regard to it, it might be error to refuse it.
But it is not necessary that a jury shall be informed as to
the whole scope of their duties in each instruction, or even
in each case.   Much is safely left to their intelligence and
knowledge of their duties.   The competency of the evi-
dence is not a question for them but for the court, and
there is nothing in the record in this case to indicate that
anything had been obtruded upon their attention but rele-
vant and material evidence proper to go to the jury, or
that there was any cause for apprehension that other con-
siderations might affect their verdict.   In other instruc-
tions they were informed that the State was required to
prove all material allegations beyond reasonable doubt,
and what the material allegations were; that the owner-
ship of the animal was material and must be proven to the
satisfaction of the jury beyond reasonable doubt; that a
reasonable doubt such as would entitle the defendant to
an acquittal must arise out of the evidence in the case;
that a reasonable doubt is such a doubt as leaves the mind

of the jury in the state that after a fair and full considera-
tion of all the evidence in the case, etc. Having received
instructions of this kind, to maintain that it is essential
that they must also be informed in express terms that no
conviction can be had except upon the evidence, is to
insist on mere nicety of expression. We are of the opin-
ion that the omission was not material under the circum-
stances of this case..

*The judgment must be affirmed.*

POTTER, C. J., and KNIGHT, J., concur.