## CURRAN v. STATE.

CRIMINAL LAW — CONFESSIONS — EVIDENCE — LARCENY — RECEIVING
STOLEN GOODS—INFORMATION—VARIANCE—INSTRUCTIONS—BILL OF
EXCEPTIONS — IMPROPER REMARKS OF ATTORNEY — APPEAL AND
ERROR.

1. Though a conviction cannot be had on the extrajudicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti*, it is not necessary that the *corpus delicti* be proved by direct and positive evidence; like any other fact it may be established by circumstantial evidence, and is only required to be shown beyond a reasonable doubt.

2. It is sufficient, if there be such extrinsic corroborating circumstances as will, in connection with the prisoner's confession, show his guilt beyond a reasonable doubt.

3. The sufficiency of the evidence to establish the fact that a crime has been committed is for the jury to determine.

4. On a criminal charge of receiving stolen property, the fact that the property was stolen cannot be established by defendant's confession alone.

5. Evidence examined and *held* sufficient corroborating proof to justify the jury in finding that the *corpus delicti* had been established beyond a reasonable doubt.

6. Evidence examined and *held* sufficient to authorize a finding by the jury that the stolen property was the property of the party named as owner in the information.

7. The evidence *held* sufficient to sustain the verdict of guilty of feloniously receiving stolen goods.

8. Although alleged in an information charging the felonious receiving of stolen property that the name of the thief was unknown to the prosecuting attorney, it is not incumbent upon the prosecution to affirmatively establish that fact.

9. The statutory offense of receiving stolen goods is not confined to cases where the goods have been received from the one who committed the larceny.

10. An information charging the receiving of stolen goods need not allege either the name of the person who stole the goods or from whom the accused received them, or that such name is unknown.

11. The opinion is expressed that though, ordinarily, a variance between an averment that the name of the thief was un-

known, in an information for receiving stolen goods, and the proof would not be material or prejudicial, such an averment might under peculiar circumstances have so misled a defendant to his substantial injury as to render a variance between it and the proof prejudicial.

12. The evidence examined and *held* insufficient to amount to a variance between averment and proof, since it did not appear that the name of the thief was known to the prosecuting attorney when he filed the information.

13. Where stolen goods were found in this state in the possession of defendant charged with having feloniously received the same it was not necessary for the prosecution to prove that the larceny was committed in this state.

14. Though goods are stolen in another state, if they are brought into this state, and here received by one having the necessary guilty knowledge, he will be liable to prosecution in this state, since his crime will be committed here.

15. An instruction requested by defendant that the mere fact that the stolen property was found under a house where defendant roomed, and which was also occupied by several other persons, is not such a possession as to cast upon him the burden of explaining how the property came there, and raises no presumption in law of defendant's guilt, was properly refused as misleading, since it eliminated all other evidence tending to show possession, and was inapplicable to the facts in the case.

16. In criminal cases the charge to the jury is not required to be in writing unless one of the parties so request.

17. It is not error for the court to charge the jury orally in a criminal case where both parties consent thereto.

18. Where the bill of exceptions in a criminal case states that the parties consented that the jury be instructed orally, the fact of such consent is not open to question on error.

19. A statement of the prosecuting attorney to the jury in argument that it was unnecessary for the state to prove that the theft occurred in this state, for the reason that if it occurred in another state, and the goods were then brought here a fresh larceny would be committed here; *held,* even if improper, not to have been prejudicial to defendant, since he was not convicted of the larceny, but of receiving the goods, and the venue as to the latter crime was clearly established.

20. Nothing further appearing than that defendant objected to certain alleged improper remarks to the jury by the prose-

cuting attorney, neither the ruling thereon, if any, nor ex-
ception to a ruling being shown, and the time when the
objection was made not being disclosed, no reviewable
error is presented by the record in respect to such remarks.

[Decided April 25, 1904.]                    (76 Pac., 577.)

Error to the District Court, Laramie County, Hon.
Richard H. Scott, Judge.

The facts are stated in the opinion.

*Marion A. Kline,* for plaintiff in error.

To justify conviction in a criminal case the evidence of
guilt should be clear and convincing, and of such a nature
as to convince any unprejudiced person beyond a reason-
able doubt that the defendant committed the crime in ques-
tion. In the case at bar the verdict is so palpably against
the law and the evidence as to show either passion and
prejudice on the part of the jury or such an indifference
to the rights of the defendant as to justify the vacation of
the verdict. When there is no conflict in the evidence upon
a particular subject the point is to be considered as estab-
lished by the evidence unless the witnesses thereto are suc-
cessfully impeached. Upon the evidence therefore in the
light of the testimony of Mrs. Drake to the effect that de-
fendant was not present when the goods were concealed
and that they were concealed by her husband, clearly estab-
lishes the want of defendant's knowledge of the conceal-
ment of the goods where they were found. There is no
evidence pointing to such knowledge on his part except
the mere fact that he occupied a room in the house under
which the goods were found. That fact alone would not
justify the inference of knowledge on the part of the
defendant. Outside of defendant's alleged admissions,
there is no evidence connecting him with the theft or pos-
session of the goods in question. The evidence is insuf-
ficient to support the verdict. No goods were identified
as the property of the railroad company; no proof was

offered that any goods were ever stolen from the cars of the company either in Wyoming or elsewhere. The bare statement is made that reports were received to the effect that boxes of merchandise consigned to Cheyenne and other points had been tampered with, or that all the goods which should have been in such boxes were not found in them when opened. The evidence does not identify the goods found as the property of the railroad company.

A conviction cannot be had on the extra-judicial confessions of the defendant unless corroborated by the proof *aliunde of corpus delicti.* (6 Ency. Law · (2d Ed.), 582, and cases cited; 1 Whart. Cr. L., Sec. 745; Williams v. People, 101 Ill., 386; People v. Williams, 57 Cal., 108; Johnson v. State, 60 S. W., 668.) Outside of defendant's alleged admissions, there is no testimony showing that he ever received any of the goods or at any time had them in his possession.

Where the appellate court is convinced that the defendant has been convicted on insufficient evidence a new trial will be granted, though refused by the lower court. (Williams v. State, 85 Ga., 538; King v. State, 44 Ind., 286; Holman v. State, 8 Ark., 110; Wilson v. State, 12 Tex. App., 488.)

No principle of law is more firmly established than that the verdict must correspond with the evidence. If guilty at all, the defendant was guilty of aiding and abetting in the larceny of part of the property and not guilty of receiving stolen goods; and the only verdict that could be supported by the evidence would be one of petit larceny upon any theory of the testimony. Where a person aids in the larceny he cannot be convicted of receiving the goods. (2 Bish. Cr. L., Sec. 1140; Hughes Cr. L., 189; 1 Whart. Cr. L. (9th Ed.), 986; State v. Kinder, 22 Mont., 516; State v. Honig, 78 Mo., 252; Smith v. State, 59 O. St., 530.) Larceny and receiving stolen property are distinct and separate offenses under the statutes, and a man cannot be guilty of both crimes in the same transaction. In order to convict of the crime of receiving stolen goods with guilty

knowledge, it must be affirmatively shown by the prosecution that the goods have actually come into the possession and under the control of the receiver. (28 Bish. Cr. L., Sec. 1139; 24 Ency. Law, 48.) There is a fatal variance between the charge in the information that the goods were stolen by some person unknown to the prosecuting attorney and the proof, it appearing that Drake, who had been jointly informed against with the defendant, was the thief, and that the prosecuting attorney knew when he drew up the information or might have known that the evidence showed that if defendant received the goods at all he received them from Drake. Having alleged that the thief was unknown to the prosecuting attorney, and it appearing by the evidence that he was known, the variance must be considered fatal. (Hughes Cr. L., 190; Presley v. State, 24 Tex. App., 34; Merwin v. People, 26 Mich., 301; Sault v. People, 3 Colo. App., 502; 3 Greenleaf's Ev., 22; Whart. Cr. Pl. & Pr., 111, 112.)

The State must prove beyond a reasonable doubt every material allegation in the information. (Patton v. State, 43 S. E., 533; Stanley v. People, 104 Ill. App., 294.) Whenever it is possible proof of the *corpus delicti* in larceny must be given by the testimony of the owner. (State v. Moon, 41 Wis., 636; Bubster v. State, 33 Neb., 663; Chisholm v. State, 45 Ala., 67; Bowling v. State, 13 Tex. App., 338.) The evidence in the case was insufficient to prove the *corpus delicti.* (Fuller v. State, 43 Ala., 275; Hand v. State, 110 Ga., 275.) Mere possession of property alleged to be stolen will not sustain conviction and is not sufficient to raise a presumption that the one in possession is guilty of larceny unless the larceny of the property has been proven by other and proper evidence. (Hughes Cr. L., 412; Lane v. State, 45 S. W., 694; Bailey v. State, 52 Ind., 462; McClain's Cr. L., 724; O'Connell v. State, 55 Ga., 297; Thomas v. State, 109 Ala., 25; People v. Williams, 57 Cal., 108; State v. Taylor, 25 Ia., 273; State v. Furlong, 19 Me., 229; People v. Montague, 71 Mich., 318.)

The ownership of the goods must be proven as laid in the information. None of the goods in question were identified as the goods of the company, and the only evidence upon that question was the alleged confession of the defendant. Such confession was insufficient to authorize a finding that the goods were the property of the person named in the information. (People v. Ennis, 77 N. Y. Sup., 228; Commonwealth v. Billings, 167 Mass., 284; Henningberg v. State, 72 S. W., 175; Buchanan v. State, 109 Ala., 7; Crockett v. State, 14 Tex. App., 226; Johnson v. State, 60 S. W., 668; State v. Nesbit, 43 Pac., 66.)

In order to make the possession of property alleged to have been stolen presumptive evidence of guilt, it must be shown that the goods were in the personal, exclusive possession of the accused. (Jones v. State, 30 Miss., 654; Orr v. State, 107 Ala., 35; State v. Wilks, 58 Mo. App., 163; People v. Wilson, 151 N. Y., 406; State v. Casper, 93 Mo., 242; Turbeville v. State, 42 Ind., 496; Van Straaten v. People, 26 Colo., 134; Casas v. State, 12 Tex. App., 65.)

The venue must be proven as laid or the defendant will be entitled to his discharge. (Stone v. State, 105 Ala., 70.) There is no evidence in the case to show where the goods were stolen. The Union Pacific Railroad Company, from whose cars the goods were alleged to have been stolen, extends from Council Bluffs, Iowa, to Ogden, Utah, and it is impossible from the evidence in the case to infer that they were stolen from the cars in Wyoming. The larceny, if committed at all, was committed when the cars were entered and the goods taken. If the goods were stolen in Nebraska, then the defendant could not be convicted in this State of the crime of receiving them unless there is an express authority of statute to that effect. (2 Bish. Cr. L., 1142.) The statutes of this State make no provision for punishing a larceny committed in another state, nor do they make it a crime to bring into the State goods stolen in another state. (Beal v. State, 15 Ind., 378; Kiser v. Woods, 60 Ind., 538; Van Buren v. State, 91 N. W., 201;

State v. Le Blanche, 31 N. J. L., 82; State v. Ronnals, 14 La. Ann., 276; Lee v. State, 64 Ga., 203; People v. Gardner, 2 Johns., 477.)

There is no evidence tending to show that there was a criminal act on the part of the defendant in receiving the stolen goods, even if it should be found that he had them in his possession. (Goldsberry v. State, 92 N. W., 906.) The evidence does not show whether all the goods were stolen or received at the same time; and there is nothing to sustain the charge of grand larceny for the reason that upon the evidence it cannot be said that enough of the goods in value were taken at any one time to constitute grand larceny. The value of property stolen at different times cannot be aggregated, so as to render the crime grand larceny. (Monaghan v. People, 24 Ill., 340; Lacey v. State, 22 Tex. App., 657; Scarver v. State, 53 Miss., 407; Smith v. State, 59 O. St., 350.)

The instruction requested by the defendant should have been given to the effect that the mere fact that the property was found under a house in which the defendant roomed, others also occupying the house, was not sufficient to raise a presumption of possession. Possession of recently stolen property is simply a fact to be considered by the jury. (State v. Bliss, 27 Wash., 468; Gablick v. People, 40 Mich., 292; Smathers v. State, 46 Ind., 452; People v. Hurley, 60 Cal., 77; 3 Greenleaf's Ev., 33; State v. Wilks, 58 Mo. App., 163; Turbeville v. State, 42 Ind., 496; Conkwright v. People, 35 Ill., 207; Moreno v. State, 24 Tex. App., 403; The State v. Bulla, 89 Mo., 599.)

The court erred in not instructing the jury in writing. (People v. Ah Fong, 12 Cal., 348; People v. Trim, 37 Cal., 276; People v. Sanford, 43 Cal., 35; State v. Harkin, 7 Nev., 384; Rakes v. People, 2 Neb., 164.) The court should have instructed the jury to acquit the defendant. (Lunsfors v. Commonwealth, 63 S. W., 781.)

*J. A. Van Orsdel,* Attorney General, for the State.

The motion for new trial and the points made by counsel for plaintiff in error in the brief raises practically but one question, namely, the insufficiency of the evidence to sustain the conviction.

We submit that the confession of the defendant in connection with the other evidence in the case was sufficient to sustain all the allegations of the information and to establish all the evidence constituting the crime for which defendant was convicted. The corporate organization of the railroad company and the value of the goods alleged to have been stolen were stipulated on the trial to be correct as alleged in the information.

It is evident from the evidence that the goods were stolen between Sidney, Nebraska, and Cheyenne, Wyoming, from the cars of the railroad company, which sufficiently establishes the ownership of the goods. The venue was established by defendant's own confession, viz: that he helped Drake carry the goods or some of them from the caboose in the yards of the railroad company in Cheyenne to Drake's residence, where the defendant had a room. The goods were not taken from the actual possession of the company until they were carried away from the caboose in the Cheyenne yards. Even if the goods had been taken from the cars in Nebraska and carried by the defendant to Cheyenne, it would have constituted such a continuous transaction as to lay the venue in either Nebraska or Wyoming; though that is not the case here.

The evidence does not connect defendant with the theft of the goods until he assisted Drake, the one who stole them, in carrying them to the latter's house, and the defendant admits that he then knew that the goods were stolen. While such evidence would seem to connect the defendant with the commission of the larceny, it is sufficient to sustain the contention that the goods did not part from Drake's possession and into defendant's possession until they reached the house where they were taken.

The identification of the property charged in the information to have been stolen as the property of the railroad company was complete, as well as being established by the confession of the defendant. The requested instruction that there would be no presumption of possession from the fact that the goods were found under the house occupied by defendant and others, would have taken from the jury the entire question of the defendant's guilt, because the instruction assumed, (1) that the property was found in the cellar of the house, where defendant had a room; (2) that the house was occupied by several other persons, and it would then have instructed the jury that those facts would not constitute such possession by the defendant as to require explanation on his part. In other words, the instruction would have informed the jury that the defendant had no knowledge of the concealment of the goods in the cellar, or that he had no connection with them. Such an instruction clearly would have been improper.

POTTER, JUSTICE.

The plaintiff in error, John F. Curran, was tried upon an information filed against him and one L. G. Drake, charging in the first count the larceny of certain goods of the Union Pacific Railroad Company of the value of $365.05, and in the second count the felonious receiving of said goods knowing them to have been stolen. It appears from an endorsement on the information that Drake pleaded guilty to both counts. The plaintiff in error was convicted on the second count, and the value of the goods received was found to be $365.05.

It is contended that the evidence is insufficient to support the verdict. One of the points insisted on in this connection is that there is not sufficient evidence to establish the *corpus delicti* outside the confession of the prisoner. While it is well settled in this country that a conviction cannot be had on the extra-judicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti,* it is not

indispensable that the *corpus delicti* shall be proved by direct and positive evidence. The proof for that purpose need not amount to a certainty. It is only required that it be shown beyond a reasonable doubt. Like any other fact, it may be established by circumstantial evidence; and it is sufficient, if there be such extrinsic corroborating circumstances, as will, in connection with the confession, show the prisoner's guilt beyond a reasonable doubt. (Whart. Cr. Ev., Sec. 632; 6 Ency. L. (2d Ed.), 582-583; Winslow v. State, 76 Ala., 42; 5 Am. Cr. R., 43; Smith v. State, 17 Neb., 358; Williams v. People, 101 Ill., 382; Johnson v. Commonwealth, 81 Ky., 325; 4 Am. Cr. R., 140; Dalzell v. State, 7 Wyo., 450.) The conclusiveness of the evidence to establish the fact that a crime has been committed is for the jury to determine. It was not competent, therefore, for the State to establish the fact that the goods had been stolen by defendant's confessions alone. But the prosecution did not rely solely upon the confession of the prisoner for proof of that fact.

The goods alleged to have been stolen consisted of merchandise, such as suit cases, or "grips," as they are occasionally called in the evidence, shoes, hats, caps, shirts, clothing and various other articles of wearing apparel. They were in the court room in the presence of the jury at the time of the trial, and from various expressions in the testimony, it is apparent that they were new goods, and such as in the usual course of business might be the subject of transportation by the railroad company from a manufacturer or jobber to a dealer.

Before the introduction of the prisoner's confessions, it had been shown by testimony that various articles, similar to those shown at the trial, had been missed by the railroad company from its freight trains; and that the goods in question had been found, packed in the suit cases and in sacks, and secreted in a cellar of the house where the two defendants lived. And officials of the company testified that the office at Cheyenne had, for some time, been flooded with

reports showing that such goods were missing from freight trains upon arriving at Cheyenne from the east. The two defendants were employed as brakemen for the company, both working on the same freight train between Sidney, Nebraska, and Cheyenne, in this State.

The witnesses for the State were unable from personal knowledge to identify any of the individual articles so found and exhibited at the trial as having been the articles taken or stolen from the trains of the company; but they were able to say that articles of the same character had been taken, or, rather, as they expressed it, "such goods" had been missing from the trains, and one of the witnesses, a special agent of the company, who had assisted in finding the goods, stated that he was at the time looking particularly for the dress suit cases that were found, and which play an important part in the confession. The goods were found under most suspicious circumstances. They were found by officers while searching for the missing goods in a cellar, and under such circumstances as to leave no room for reasonable doubt that they had been placed there by someone for the purpose of concealment. Moreover, the cellar where they were discovered was under a house occupied by two freight brakemen who were employed on the route from which such goods had been missed. This house, it appears, was occupied by Drake and wife, and a man named Dilley and his family; Mr. and Mrs. Dilley being the parents of Mrs. Drake; and Curran, the plaintiff in error, occupied a room in the house. The size of the house is not specifically mentioned, but it was evidently not a large one.

We have, then, the above undisputed facts, independent of the prisoner's confession; and clearly they strongly tend to show that the goods had been stolen from the company.

Where a prisoner was charged with the larceny of a steer it was said in Dalzell v. State, 7 Wyo., 450, that the fact that the animal was missing, and that certain remains were found corresponding in description with the lost animal, was direct evidence tending to prove the *corpus delicti,* and the

only question was as to its sufficiency; and that, although the loss and subsequent finding of the property will not in all cases prove or tend to prove the *corpus delicti,* yet the loss and even imperfect identification of it in the possession of the accused, together with incriminating circumstances of misstatement and concealment, may not only identify the guilty person, but satisfactorily establish the *corpus delicti.*

Shortly after the goods were discovered they were taken to the city jail and shown to Curran, who had been arrested and was confined there, and he was questioned concerning his connection with them. During the conversation that then occurred there were present besides Curran, H. L. Anderson and H. I. Roth, officials of the company; Tim Kelliher, a special agent; A. D. McNeil, city policeman, and Conrad Lucke, a stenographer. All of these persons testified at the trial, and their testimony as to Curran's statements is in substantial accord. Kelliher and McNeil had discovered the goods, and before finding them had made a search of Curran's room, where they found a few articles, consisting of shirts and underwear, but it is not very clear whether they were among the goods present at the trial.

At the time of the conversation at the jail the witnesses agree that the various articles in the suit cases or grips were in the same condition as when discovered, and some of them testified that the contents of the suit cases were shown in Curran's presence. Kelliher testified that Curran admitted that he knew that the goods then before him (being all that had been found in the cellar) had been stolen by Drake, and that he helped Drake to carry the three grips from the caboose to the house; that he stated that they were carried from the Union Pacific yards in Cheyenne, having been stolen on the train, and put in the caboose, and from there taken to the Drake residence. Upon the witness being asked whether the dress suit cases were stated by Curran to have been carried from the train to his room, and whether that meant the contents also, he testified: "That is the way they were. I pointed them out to him and asked him if he knew

where Drake got them. We were talking about his taking them from the cars," and, further, "Mr. Curran told me that, after the train was put away, after the caboose was standing in the yards, they carried them to Drake's house." This witness, as well as the others who were present at the conversation, testified that Curran admitted it to have been a mistake on his part not to have notified his superior officers that stealing was going on, and that had he done so, the stealing might have been stopped.

Mr. Anderson testified on this subject as follows: "The defendant admitted to me, in answer to a question, that he had helped carry the grips that we see before us now from the caboose to the house occupied by Drake. And in answer to a further question if he knew at the time the goods were stolen, he said: 'Yes,' and that 'Drake stole them;' Drake took the goods, and he simply helped to carry them from the caboose to his house, but he admitted that he knew the goods had been stolen by Drake at the time he carried them." The testimony of Roth and McNeil does not differ substantially from that of Kelliher and Anderson. All these witnesses mention a mackintosh as having been referred to during the conversation, and they testified that Curran said that Drake had that, or, that "he had seen Drake with it."

Mr. Lucke took down the conversation in shorthand, and he used either his notes, or a transcription thereof, to refresh his memory as to the exact language used. He was not asked to give the entire conversation. But what he did testify to he most positively stated was strictly accurate. His statement of the confession is as follows: "He was told that in his room there was found some silk and asked where he got that, and said he got that from brakeman Miller, who roomed with him at the time. In regard to the mackintosh, he was asked if he ever saw the mackintosh. He said Drake had the mackintosh. Then he was pointed out these three grips and was asked if he helped carry anything from the train to Drake's house. He said

he helped carry the grips. He was asked: You helped carry these goods from the caboose to his house knowing they were stolen? That is not a question, that is a statement Mr. Anderson made. Mr. Anderson asked him: Did you help carry anything from the train to his house? He said, Yes, I helped him carry these grips. He was pointed out a suit case and asked if he ever saw that suit case. He said, Yes, Drake had it. He was asked, Was this Drake's? Answer, Yes. Did you talk to Drake where he got it? I knew where he got it. You knew Drake had stolen it? Yes, sir, I knew it. Now, as a loyal employee, did you not think it your duty to advise your superiors, if you were straight and honest? Yes, sir. I suppose it was; it would have stopped it."

At another point in his testimony the witness, Lucke, stated that Curran was asked about one of the suit cases having been in his room, and that he denied having taken it there, but said that "Drake brought it there," and that in another answer he denied any knowledge of its having been in his room. The witness Roth also testified that Curran acknowledged that the suit cases were in his room, but said that they belonged to Drake.

It should be stated that Curran had been rooming at the Drake house only about two weeks before his arrest. Prior to that time he made his headquarters in the caboose or way car; and, from Mrs. Drake's testimony, who was examined on behalf of the defense, it appears that the suit cases in question had been brought to the house two or three weeks before they were discovered and taken by the officers. She testified, however, that Drake and not Curran brought them to the house and concealed them.

The prosecution called as a witness one J. F. Costello, who, it appears, had formerly worked for the railroad company, and had been arrested at the same time with Curran. He testified that three or four days before his arrest he was in Curran's room, and Drake brought in and exhibited one of the suit cases, which he identified as present in the court

room, and also three or four hats that looked as though they were new. Curran, in his testimony, admitted that Drake showed the suit case to Costello, but he did not refer to the hats. He testified, also, that Drake brought one of the suit cases into his room on another occasion and offered to sell it to one Pratt. Pratt corroborated this, and identified the suit case.

Curran denied having made the admissions testified to by Kelliher, Anderson, Roth, McNeil and Lucke, but the jury evidently disbelieved him in that particular; and they could hardly have done otherwise in view of the overwhelming testimony to the contrary. It must be accepted as an established fact that Curran admitted having knowledge that the goods were stolen property, and that they were stolen from the cars of the Union Pacific Railroad Company. This confession is not the only proof of the *corpus delicti*. The other evidence tending strongly, independent of the confession, to show that the goods were stolen, has already been referred to. That testimony is entirely consistent with the confession and corroborates it. It is to be observed that no attempt was made on the trial to show that Drake or Curran or any other person in the house occupied by them had obtained the goods honestly or in good faith.

There is another important item of evidence that might not have been admissible against Curran, but which was brought out on the cross-examination of the witness Roth by defendant's counsel. That witness was asked: "You know as a fact, Mr. Roth, Drake has confessed to these thefts—that he took these goods? You know that as a fact?" And the witness answered, "Yes, sir." Thus by evidence not objected to, but brought out by the defense, the jury were informed that Drake had confessed the larceny of the goods. Moreover, Mrs. Drake, a witness for the defendant, practically admitted, on cross-examination, that she knew the goods had been stolen.

From all the evidence, therefore, not only was the jury justified in finding that the *corpus delicti* was established

beyond a reasonable doubt; but it is difficult to see how they could have arrived at any different conclusion. The fact that the property had been stolen was, in our opinion, proven by competent and sufficient evidence.

What has been said sufficiently answers the further contention that the ownership of the goods was not proven. The company had missed from their cars certain articles of merchandise. Goods of the same character and description were found secreted in the cellar of a house occupied by two of its brakemen, upon whom suspicion had naturally rested. No claim is made that the goods so concealed belonged to any other person. The company took possession of the goods and held them until the trial. It does not appear that any other person asserted ownership. It was clearly proven that the goods had been stolen. The jury were justified in finding that the stolen goods were the property of the railroad company, as alleged.

It is further strenuously argued that if the evidence establishes the guilt of the plaintiff in error of any crime in relation to these goods, it shows him guilty of larceny, rather than receiving the stolen property. As we understand the argument, it is that, upon the evidence, he should have been convicted, if at all, upon the first count; and not upon the second. Counsel insists that there was no proof that Curran ever received any of the goods except possibly the suit cases, two only of which are described in the information, and that their value is less than twenty-five dollars, and hence he could not be punished as for a penitentiary offense.

In the first place there seems to be some uncertainty in the evidence as to whether Curran's confession that he assisted in carrying the suit cases to the house included the goods which were contained therein when they were found and when his confession was made. But, conceding that he confessed merely to carrying the empty suit cases, they were found concealed with numerous other articles also stolen from the company in the cellar of a house where

Curran and Drake both roomed. Curran was employed as a brakeman with cars from which the goods had been taken. He denied having taking the goods, but claimed, so far as he claimed anything as to the larceny, that Drake had done the stealing. He denied any knowledge of the concealment of the goods, and indeed any knowledge of the existence of the cellar. As he had been found untruthful in his testimony concerning the confession, the jury may have refused to believe him when he said that he had nothing to do with concealing the property. It is evident that he knew that some of the stolen goods were in the house; for he admits having seen one or more of the suit cases there; and some new hats were brought into his room by Drake when Costello was there. He admits that a few days before his arrest he had reason to suspect that some stealing had been going on, for some officers had taken him to a certain house of ill repute to learn whether the inmates could identify him as a person who had sold or offered to sell some of the goods claimed to have been lost by the company. He was not identified as such person. Before his arrest he gave no information to the officers concerning the suit cases he had assisted in taking to the house, nor of the fact that any goods were at the house.

The jury apparently considered his explanation, or rather his absolute denial, as unsatisfactory. Their verdict would seem to indicate that they found Curran to have been a guilty receiver of all the goods from the fact that Drake and himself worked together as brakemen, and that the stolen goods were found in a house occupied by both of them, where Curran had taken a room but recently, and that the latter had helped take the suit cases there, in the absence of any reasonable explanation on his part. In other words, it is apparent that his confession respecting the suit cases was taken as connecting him with all the goods at the house, under the circumstances above related; and we find it impossible to say that they were not warranted in giving such an interpretation to the testimony. We think the evidence sufficient to sustain the verdict.

It is further contended that there is a fatal variance between the evidence and the information, in this: The second count upon which plaintiff in error was convicted charges that the goods had been stolen by some evil disposed person to the county and prosecuting attorney unknown; while it is urged that the evidence clearly shows that Drake stole the goods, and that the prosecuting attorney knew that fact before he filed the information. It is said in counsel's brief that the confession of plaintiff in error had been related to the prosecuting attorney, and that all the facts were known by him or could have been known at the time the information was prepared and filed.

In the first place, it is to be observed that there is nothing whatever in the record to show that the prosecuting attorney knew, when he filed the information, that Drake had stolen the goods, or what party was guilty of the larceny as distinguished from receiving the goods. Indeed, the inference is strong and persuasive that he had no such knowledge, since the information charges Drake and Curran jointly with both the larceny of the goods and with feloniously receiving them knowing them to have been stolen. It does not appear that Drake had confessed the larceny at the time the information was filed. Although it doubtless appears that Drake committed the larceny, it is not shown when that fact first became known or established sufficiently to be alleged by the prosecutor. There was no attempt or offer to show that the prosecuting attorney had any knowledge whatever other than disclosed by the information. If counsel's assertion that the facts of Curran's confession had been related to him before he filed the information be true, it is enough to say that it is not shown to be true by the evidence. The facts, therefore, do not sustain the contention as to variance.

Notwithstanding that it is alleged in the information that the name of the thief was unknown to the prosecuting attorney, we do not think it was incumbent on the prosecution to affirmatively establish that fact. Our statute makes the re-

ceiving of stolen property, knowing it to have been stolen, a distinct substantive crime. It reads as follows: "Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, taken by robbers, embezzled, or obtained by false pretense, knowing the same to have been stolen, taken by robbers, embezzled or obtained by false pretense, shall, if the goods are of the value of twenty-five dollars or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than twenty-five dollars, shall suffer the punishment prescribed for petit larceny." (R. S., Sec. 4987.)

Under such a statute, the prevailing rule, based as we think upon sound reason, is that in a prosecution against a receiver the name of the thief is immaterial. (Kirby v. U. S., 174 U. S., 47; State v. Hanna, 35 Ore., 195; 2 Clark & Marshall on Crimes, Secs. 380, 381; State v. Hazard, 2 R. I., 474 (60 Am. Dec., 96.) The crime as defined by the statute is the receiving of stolen goods knowing them to have been stolen; the thing denounced is receiving stolen goods knowingly; and the receiving of them from a particular person is not constituted an essential element of the offense. The material facts are, (1) the receipt, (2) of goods which have been stolen, and (3) knowing them to have been stolen. (Semon v. State, 158 Ind., 55.) Hence, under similar statutes, by the overwhelming weight of authority, it is unnecessary to allege either the name of the thief, or that the name is unknown, or from whom the property was received. (Kirby v. U. S., *supra;* State v. Hanna, *supra;* State v. Hazard, *supra;* Semon v. State, *supra;* People v. Clausen (Cal.), 52 Pac., 658; People v. Ribolsi, 89 Cal., 496, 26 Pac., 1082; Commonwealth v. State, 11 Gray, 60; State v. Murphy, 6 Ala., 845; Anderson v. State, 38 Fla., 3; State v. Guild, 149 Mo., 370; State v. Feuerhaken, 96 Ia., 299; Allison v. Commonwealth, 83 Ky., 254; Campbell v. State (Miss.), 17 So., 441; Com. v. Hogan, 121 Mass., 373; 1 McClain Cr. Law, Sec. 719; 17 Ency. Pl. & Pr., 893; Schriedley v. State, 23 O. St., 130.)

Originally at common law the receiver of stolen goods was indictable only for *misprison* of the felony of larceny, or for compounding the felony; but an early English statute made him an accessary after the fact to the thief. (2 Bish. New Cr. L., Sec. 1137; 2 Clark & Marshall on Crimes, Sec. 380.) The few decisions holding it necessary to allege and prove the name of the thief, or that it was unknown, if that be the fact, seem to proceed upon the theory of the common law or the subsequent English statute, and fail to distinguish between a receiving as accessary, and a receiving under the statutes as a substantive felony. Under still later English statutes, the offense was permitted to be punished as a substantive felony, and the English courts thereafter held it unnecessary to allege and prove the name of the thief. (See State v. Hazard, 60 Am. Dec., 96, 2 R. I., 474, where a number of English cases are reviewed.) It has been sometimes stated that if the stolen goods have been transferred from the thief to a guilty receiver, the latter takes as a receiver, and as to him the goods are not stolen, so that one who takes from him, however wickedly, is not guilty of receiving stolen goods. (2 Bish. New Cr. Law, Sec. 1140.) That was doubtless the rule of the common law, and the Supreme Court of Indiana conceived it applicable to the statutory definition of the offense. (Foster v. State, 106 Ind., 272.) That case is the most frequently cited modern authority in support of such doctrine. And it was held in that case that to sustain the charge of having received stolen goods, it must be proven that the goods were received, either directly or indirectly, from the thief; but that it would be sufficient to allege that the goods were stolen by some person unknown to the grand jury, in which case it must be made to appear at the trial that the name of the thief was unknown to the grand jury, and that reasonable diligence had been used to ascertain his name. It was also held that, although the name of the thief may have been unknown to the grand jury, he must in some manner be identified at the trial. We think that the

case must be regarded as to some extent overruled by the
later case of Semon v. State, *supra,* wherein it was distinctly
asserted that in a prosecution for receiving, neither the
thief nor the next former possessor is on trial, and his
identity is, therefore, an immaterial matter.    But it was
said that, while it was not necessary to allege the name of
the thief, or that his name is unknown, yet if it be alleged,
it must be proved, for the identification of the offense, citing
Foster v. State, *supra,* and 2 Bish. New Cr. Pro., Sec. 982.
Thus in Foster v. State, the name of the thief seems clearly
to have been regarded as material on the ground that, unless
the receiving was from the thief, the offense would not be
established; while in Semon v. State it was declared to be
immaterial, and proof would only be necessary to identify
the specific offense in case there should be an allegation
naming the thief, or that his name was unknown.
It would seem that the only theory supporting the decision
in ·Foster v. State was departed from in the later case of
Semon v. State.

In Kirby v. U. S., *supra,* where the prisoner was charged
with having received postage stamps which had been stolen
from the United States, it was said: "If the stamps were
in fact stolen from the United States, and if they were
received by the accused, no matter from whom, with the
intent to convert them to his own use or gain, and knowing
that they had been stolen from the United States, he could
be found guilty of the crime charged even if it were not
shown by the evidence from whom he received the stamps."

In Smith v. State, 59 O. St., 350, it was held to be un-
necessary to show that the stolen property was received
from the thief; and that the offense is made out by proof
that, with the necessary knowledge, it was received from
any one.    And in California, where the information alleged
the property to have been stolen by a person who was therein
named, and a variance was claimed, the court stated that
the averment of the name of the person who stole the goods
is, under the statute, unnecessary, and was, therefore, im-

material. (People v. Clausen, 52 Pac., 658.) In Wright v. State, 5 Yerg., 154 (26 Am. Dec., 258), it was said: "Under this act, the only inquiries are, whether the accused received the goods, knowing them to be stolen, having at the time a fraudulent intent to deprive the owner of them. These facts being established, all other inquiries are irrelevant."

State v. Hazard, 2 R. I., 474 (60 Am. Dec., 96), is a leading case on this question; and there the court held that an indictment need not allege the name of the person from whom the goods were received, nor that his name was unknown. But it was said that, had the indictment alleged the name, whether necessary or not, the government would have been held to prove the receipt from that person, and not from another; but would not have been held to the same strictness had the name been alleged to be unknown; that it was once held, a count alleging the name of the person from whom the goods had been received to be unknown could not be sustained by proof of the receipt of the goods from a known person, but that the point had been so far overruled that the person who committed the larceny has been admitted as a witness to prove the fact of the larceny, and that the prisoner received the goods from him, and the prisoner thereupon convicted.

We are of the opinion, both on reason and authority, that the statutory offense is not confined to cases where the goods have been received from the one who committed the larceny, and that an information need not aver either the name of the person who stole the goods, or from whom the accused received them, or that such name is unknown, as the matter is immaterial to the issue. It logically and necessarily follows, we think, that, even though alleged, it may be treated as surplusage, and the prosecution should not be required to produce affirmative proof to sustain the immaterial averment. But we are not prepared to hold that, in case of such an averment, a variance between it and the proof would in no case be material, and operate to the

prejudice of a defendant. While we think it would not ordinarily be prejudicial, yet it might be possible, under peculiar circumstances, for a defendant to be misled to his substantial injury through such an averment and proof substantially differing therefrom.

Our statutes provide that no indictment, and this includes an information, shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected, for, among other things, any surplusage or repugnant allegation where there is sufficient matter alleged to indicate the crime or person charged. (R. S., Sec. 5301.) And that a variance in the name or description of any matter or thing whatsoever shall not be deemed ground for acquittal, unless the court before which the trial shall be had, shall find that such variance is material to the merits of the case or may be prejudicial to the defendant. (R. S., Sec. 5302.) In this case it does not appear that there was a variance; and hence the only objection that could be urged in this respect is that the State did not affirmatively prove that when the information was filed the name of the party committing the larceny was unknown to the prosecuting attorney. For the reasons stated, we think it was not incumbent upon the prosecution to furnish that proof.

Another contention on behalf of the plaintiff in error seems to be that the State was bound to establish as a fact that the larceny of the goods was committed in this State. That contention cannot be sustained. If the goods had been stolen in Nebraska, or any other state, and brought into this State and were here received by the plaintiff in error, with the necessary guilty knowledge, he would be liable to prosecution under the statute in this State. His crime would be committed here. The goods were in fact found concealed in this State, and, according to the verdict, in the possession of plaintiff in error. He admitted that he assisted the confessed thief in this State in carrying some of the articles to the house where they were discovered.

The refusal of the trial court to give the following instruction is assigned as error:

"The jury are instructed that the mere fact that the property said to have been stolen was found under a house where the defendant roomed, such house being occupied by several others besides the defendant, is not such a possession by the defendant as to cast upon him the burden of explaining how the goods came to be in that place; and that it raises no presumption in law of the guilt of the accused. It is only a circumstance to be considered by the jury in connection with all the other facts in the case."

This instruction was properly refused. In the first place it had a tendency to mislead the jury by indicating that the only evidence of possession was the fact that the goods were found in a house occupied by defendant. There was other evidence tending to connect the defendant with possession. The instruction eliminated all the other evidence, such as the fact that defendant was at the time employed by the company, and that his associate brakeman and himself were living in the same house; that he had gone there to room but recently; that he admitted having helped Drake, the confessed thief, to take some of the articles to the house where they were found; that Drake, in the presence of others, had shown some of the goods in Curran's room while he was there. Though it may be assumed that as an abstract proposition the instruction may have fairly stated the law, it was inapplicable to the facts in the case, and consequently would have been misleading. Moreover, the defendant did offer an explanation. He denied any knowledge of the goods or their concealment, as well as any knowledge of the existence of the cellar where they were discovered; and it is difficult to see how he could have suffered any prejudice from the refusal to give the requested instruction. Again, it is doubtful, at least, if the first part of the instruction did not invade the province of the jury. A very material question for their determination was whether the goods were in defendant's possession. By

the instruction it was attempted to have the jury informed that the stolen property was not in his possession. The facts were all before the jury upon this question, from which it was their peculiar province to say whether or not they were thereby convinced beyond a reasonable doubt that defendant had received the property. The instruction seems to treat the goods as to some extent in defendant's possession, but it says that such possession was not sufficient to require an explanation on his part. That part of the instruction seems to withdraw from the jury the fact that the property was found in a house occupied by him, or to tell them that such fact is of no consequence. And the last clause does not, we think, cure the misleading and erroneous effect of that which precedes it.

The jury were instructed orally by the court, but the charge was evidently taken down by the stenographer as it appears in full in the bill of exceptions. It is contended that the court erred in not instructing the jury in writing, and one of the grounds for new trial stated in the motion was that the court erred in giving oral instructions after defendant by counsel had objected thereto and requested that written instructions be given. From statements in the brief, and an affidavit of the prosecuting attorney filed in opposition to the motion, it appears that there had been a request on the part of defendant's counsel before the close of the testimony, but on the following day when the time arrived for the court to deliver its charge there was an understanding between counsel and the court that the jury might be instructed orally, and defendant's counsel then handed some memoranda to the court asking that the charge cover the points therein referred to. But so far as the facts are concerned in relation to this matter the question is fully set at rest by the bill of exceptions which states that the parties consented that the jury be instructed orally; and the journal entry showing the overruling of the motion for new trial also recites that counsel for defendant consented to oral instructions being given.

The statute provides that in criminal trials the charge shall be reduced to writing by the court, if either party request it. (R. S., Sec. 5371.) It is, therefore, not obligatory that the charge be in writing unless there is such a request by one of the parties. In this case not only is no request shown by any record of which we can take cognizance, but it appears that both parties consented to an oral charge. No error, therefore, was committed in this case by charging the jury orally.

In the motion for new trial, one of the grounds assigned was alleged misconduct of the prosecuting attorney in his closing argument to the jury. It is claimed that the prosecuting attorney erroneously stated the law to the jury by saying in substance that it was unnecessary for the State to prove that the goods were stolen from the cars of the railroad company in this State, for the reason that if the original theft occurred in another state, and the stolen goods were then brought into this State, a fresh larceny would thereby be committed here. That a statement to that effect was made in the prosecutor's argument, and that an objection was interposed, is shown only by an affidavit of defendant's counsel attached to the motion for new trial. There is no other mention of the matter in the record. But without deciding whether or not the question is properly presented (see 2 Ency. Pl. & Pr., 756-758), or whether the prosecutor's alleged remarks incorrectly stated the law, it is evident that the error, if any, was not prejudicial to the plaintiff in error, since he was not convicted of the larceny, but of feloniously receiving the goods, and the venue as to that crime was clearly established. Moreover, the action or ruling of the court upon the objection to the prosecutor's remarks is not shown. For all that appears in the affidavit, the objection may have been ruled on favorably to the defendant and the prosecuting attorney duly cautioned. The only showing in this respect is that an objection was made to the alleged misstatement of the law, and that the court did not instruct in regard to the venue. Again, it is not

shown when the objection was made, or that any exception was taken to a ruling thereon. It is not stated that the court's attention was called to the matter at the time. (Horn v. State, 73 Pac., 705; ante, 80.)

We are convinced that the evidence was sufficient to justify the verdict of the jury, and we find no error in the record. The judgment will, therefore, be affirmed.

*Affirmed.*

Corn, C. J., and Knight, J., concur.