## PROVING CORPUS DELICTI BY CIRCUMSTANTIAL EVIDENCE.

Common Pleas Court of Franklin County.

STATE OF OHIO v. R. STANLEY RHODES.[*]

Decided, April Term, 1909.

*Bribery—Necessity of Relying on Acts Performed or Declarations Made a Sufficient Reason for Varying the Order of Evidence Offered by the State.*

In a trial for bribery the court may properly determine the order of proof. In a case where the *corpus delicti* or the body of the crime can not be directly established, except by gradual building up of the structure by proof of a general conspiracy which tends to establish it, the court may within its discretion permit the proof of the alleged general conspiracy in the order of its alleged steps tending to prove the body of the crime.

*Karl T. Webber,* Prosecuting Attorney, *R. W. McCoy* and *T. J. Duncan,* for State.

*Booth & Keating,* for defendant.

KINKEAD, J.

The case was an indictment for bribery. It was sought by the state to prove its cause by various acts and declarations alleged to have been done and made in pursuance of a conspiracy to defraud the city of Columbus in respect to a certain paving contract.

No direct evidence could be produced of the alleged act of bribery, the *corpus delicti*, it being necessary for the state to rely upon the acts performed, and declarations made, in pursuance of the alleged conspiracy. The defense protested against such rule.

The proof offered, to which objection was made, and which was the immediate cause of the discussion which covered a period

---

[*]For opinion of the Supreme Court on other questions involved in the case, see 81 Ohio State, 397.

of two days, related to one step alleged to have been taken by the defendant in the alleged conspiracy, said to have been the cause of the crime charged in the indictment. This suggested the question of the order of proof, which must of necessity be determined by the court, within its discretion. Much benefit was derived from the discussion, sufficient, perhaps, to enable the court to readily pass on all questions that may arise touching the admissibility of evidence promptly and without further consumption of time in argument.

It may be remarked that a controlling principle which led to the conclusion reached is that all rules of evidence are designed for the ascertainment and development of truth, and that courts must not build up a body of technical rules, or apply rules so rigidly, or in such a technical manner, as to make it impossible to demonstrate the truth.

In criminal procedure absolute certainty is not always possible, the law being satisfied with producing a certainty passing a reasonable doubt.

I think if the origin, purpose and history of the rule of evidence pertaining to the *corpus delicti* is kept in mind, and by disregarding mere technical barriers trial courts will have no difficulty in exercising its powers respecting the admission of testimony in such way as to develop the truth, and at the same time properly perform its duty and function in submitting the case to the jury.

The lengthy argument was had so that we could be fully advised of the claims of both sides, and an intelligent conclusion reached as to proper exercise of the order of proof, which is concededly within the province of the court. The court did not wish to be in haste about it, nor to make an order which would in the least degree prejudice either the state or the defendant.

It was readily apparent that this case, so far as pertained to the proof, was quite unlike the previous cases which have been tried growing out of the same subject-matter, and I did not propose to so exercise the discretion, as requested by the prosecuting attorney, unless I was clearly satisfied that absolute justice demanded it.

Nor did I propose to exercise this discretion and consume a great deal of time, as in the previous cases, until I was convinced that I would be justified in the public expense, nor until I was reasonably satisfied that the entire case to be presented would justify it.

I had made up my mind that if, upon the statements of counsel for the state, there would probably be nothing to finally present to the jury, I would make short work of the case.

I had only two doubts in the matter. One as to the claim of the state regarding the alleged general conspiracy to defraud the city by procuring the award of the contract to pave East Broad street, out of which the several bribery charges grew.

Following the rule of the Haymarket case, 122 Ill., 1, and having solved that question in favor of the contention of the state, I then was ready to exercise the proper discretion by permitting proof of the alleged conspiracy by particular acts and declarations without first putting the state to proof of the general conspiracy, provided I thought there was enough proof as to the *corpus delicti* to warrant the final submission of the case to the jury.

I am frank to say, that, if I had reached the conclusion that there was not sufficient proof of the *corpus delicti* to warrant its submission to the jury, it was not my purpose to force the prosecutor to present that part of his case first, because I thought if the prosecutor had not sufficient evidence to warrant this course, that the fair and just way to the defendant and to the public treasury was to first test out the proof of the crime before proof of the alleged conspiracy.

The origin of the rule of evidence, its original purpose, and the extent to which it has been carried in this country, will more completely and satisfactorily demonstrate its utility under modern law.

The rule had its origin in English law in cases of murder.

"If after a man had been convicted of murder and hung, and those who clamored for his blood have found chronic happiness in contemplating the justice of the law, the infallibility of the tribunals and the unswerving decision of judicial evidence, the supposed murdered person appears, the situation is not pleasant. To avoid such exposure, the judges long ago in-

vented the doctrine of the *corpus delicti,* by which says Starkie, 'the accused shall not be convicted unless the death be first distinctly proved, either by direct evidence of the fact or by inspection of the body'; a rule warranted by melancholy experience of the conviction and execution of supposed offenders, charged with the murder of persons who survive their alleged murderers.''

Bishop, in his Criminal Procedure, Section 1056, says:

''This doctrine requiring a special directness and clearness in the proofs of there having been a crime, was extended to larcenies from unknown persons and to some, and possibly all, other indictable delinquencies.''

And the learned Bishop adds:

''Later, it has been regarded rather of caution than of absolute law. It is perceived that the only service it could ever he was to cover up those blunderings of justice which were apt to come to the public gaze; for if one was wrongly convicted through a blunder in any other part of the case than the *corpus delicti,* it would seldom become known, hence the like rule was not applied to such a case.''

Bishop explodes the old idea that the *corpus delicti* can be proved only by direct evidence by an apt illustration of a man going into the London Docks sober, without means of getting drunk, and comes out of the cellars very drunk. It was reasonable evidence that the man must have stolen some of the wine in the cellar, though you could not prove that any wine was stolen or that any wine was missed.

So the rule has been established in this country with but little dissent that extra judicial confessions or admissions of guilt, alone and uncontroverted, are deemed inadequate to establish the *corpus delicti,* though the courts are satisfied with slight corroboration. *1 Bishop Cr. Pro.,* Section 1059.

I am much impressed with the statement made by the learned Bishop that the rule of *corpus delicti* is one of caution rather than of absolute law, and from the very nature of things and because of the well established lines marking off the regular functions of court and jury, that to warrant the court in acting

there must be a total failure of proof of the *corpus delicti;* that where there is even slight corroboration it must go to the jury. The court performs its function when it permits the evidence to pass the jury.

I am also impressed with the fact that courts must not apply this rule of caution so rigidly as to result in a denial of justice. In the application of the doctrine to the class of crimes where it is next to impossible to prove the body of the crime, I apprehend it to be the duty of the court to be liberal in the exercise of the power of admitting testimony and submitting it to the jury.

In case of homicide, or of larceny of specific property, there is no hardship imposed upon the state in first requiring proof of the *corpus delicti.* But in crimes committed in secrecy, where it is possible for the giver and taker of a bribe to hide and conceal the body of the crime, a strict application of the doctrine of *corpus delicti* would make it well nigh impossible to convict.

Courts must not, by a rigid application of the rule, enable one, who may perchance be guilty of a crime such as is charged here, to hide behind the rule of evidence touching the *corpus delicti* and defy the state.

I am rather inclined to believe that there is some benefit to be derived, by analogy, from the rule of deduction drawn from the possession of stolen property, not satisfactorily explained.

The receipt of money received with the declared purpose of using it as a bribe by the one giving it, and received by the receiver for the self declared purpose of giving it as a bribe, followed by the admission of the receiver that the money had been so used, and followed also by the favorable action by the public official to whom it is declared to have been given, are circumstances, which, if proven as claimed by the prosecution, would warrant the submission to the jury. Added to this is the claim made by the prosecution that the check given for this money will be produced which is claimed to have passed through the banks, are sufficient to convince the court that it will be entirely justified, if such claims are made good, in permitting

the prosecutor to prove the alleged conspiracy step by step, without first proving the existence of the alleged general conspiracy. For the benefit of counsel, I call attention to cases which I have examined, and which were not cited in argument, and which, to a large extent, have aided me in reaching a conclusion respecting the order of proof. *State* v. *New,* 22 Min., 76. (Under the statute providing that confession should not be sufficient to support a conviction, in embezzlement, held that it was sufficient that there was evidence of the receipt of the money and failure to pay the same over, independent of the defendant's confession.)

*Osborn* v. *Commonwealth,* 20 S. W., 223. (Charge, poisoning cattle.) A detective told the defendant that the owner of the cattle had a grudge against him. Defendant suggested that revenge be taken, and that he should get some paris green and put it within reach of the owner's cattle, which he did, in company with the detective. In the conversation with him he confessed that he had given the owner's cattle paris green before, which is pertinent to the case on trial. Although the owner proved that his cattle had been poisoned by paris green before, the court held that the defendant's planning revenge and putting the paris green, in company with the detective, in reach of the cattle, corroborated the confession.

*Greenwade* v. *Commonwealth,* 12 S. W., 131 (Ky.). Under statute requiring other proof than the confession to prove the crime, the defendant having confessed that he committed the crime, and having also, in the same conversation, told where the horse stolen might be found, and the horse having been found there at that place, the resolution of the court was that evidence of the owner that he had been deprived of his horse, the finding of the horse where the defendant said it was, and the confession, authorized a conviction. See also *State* v *Wescott,* 104 N. W., 341, 130 Ia., 1.

*State* v. *Knowles,* 83 S. W., 1083, 185 Mo., 141. (Specially paragraph 10 of the syllabus in S. W. Rep.) Full proof of *corpus delicti,* independent of the confession, not

necessary. *Corpus deliciti* may be proved by circumstantial evidence. *Curran* v. *State*, 76 Pac., 577, 12 Wyo., 553. Circumstantial evidence case.

*Flower* v. *U. S.*, 116 Fed. Rep., 244. See *1 Bishop's Criminal Procedure*, Section 1056, cited in that case, stating that the rule requiring proof of the crime by independent evidence was rather one of caution than of absolute law.

In view of the conclusions reached by the court, it is suggested that the proof of the state be directed to the body of the alleged crime by proceeding to the proof of the alleged general conspiracy.