**Mark ABEYTA, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 85-74.**

Supreme Court of Wyoming.

Aug. 27, 1985.

Leonard Munker, State Public Defender, and Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div., John W. Renneisen, Senior Asst. Atty. Gen., Laura L. Beard, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROONEY, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant Mark Abeyta was convicted by a Johnson County jury of two counts of aggravated assault and battery. The only issue appellant raises on appeal is whether there was sufficient evidence to sustain his conviction.

We will affirm.

It all started November 27, 1984, with a normal barroom fracas in a Buffalo bar. The principals in this hubbub had consumed various amounts of alcohol—a couple of beers on the low end of the spectrum to a lost count on the high end.

One Reynaldo Ayala, a man known to appellant and the drunkest of the lot, was causing a ruckus in the bar. In the words of the victim, Mike Haveman, "what was going down" was Ayala "trying to cause a fight with just about anybody that he could

possibly get in one with." Describing his own condition, the victim said he was "pretty sober still."[1] Other witnesses testified that Ayala laid hands on a woman, cussed the barkeep and threatened to beat him up. Appellant said he went over to Ayala and "told him to mellow out." The bartender had asked Ayala about ten times to leave the bar.

According to the victim, he became concerned that someone would get hurt unless something was done. He thereupon consulted with the bartender, William H. Peterson. According to Peterson, Haveman said, "with your permission, I'll remove him (Ayala) from the bar." Peterson said, "Well, you've got my permission." Thereupon without any further conversation, resistance or objection, Haveman placed Ayala over his shoulder and proceeded to leave the bar. According to one witness, Ayala lay peacefully on the shoulder of Haveman like he was just going along for a ride.

Gary Crawford, a patron at the bar, testified that just before Haveman went out the door, appellant came up from behind and hit Haveman in the back. Haveman's companion, Pat Turnipseed, viewing the encounter from the same angle as Crawford, described the hit in the back as more of a "stab punch." Haveman said appellant followed him when he was on his way out the door. He felt a sharp pain in the back and almost "went down," seeing appellant about the same time. Outside Haveman deposited Ayala on the ground and when he turned around he saw the blade of a pocketknife in appellant's hand. Then, according to Haveman, appellant slashed him once or twice on the wrist with the knife. Pat Turnipseed hit appellant over the head with a pool stick and put him on the ground. Haveman went back into the bar and announced, "I've been stabbed." Thereafter, appellant went back into the bar wielding a machete and menacing the bar patrons. He swung the machete at Crawford and said, "I am going to cut your (expletive deleted) head off." Crawford defended himself with a pool stick. Appel-

lant left the bar with dispatch but was arrested within a few minutes. Haveman's back wound was about one inch deep and one and one-half inches long. He was treated for his wounds at the hospital.

Appellant was charged with, and convicted of, two counts of aggravated assault and battery. Appellant made a motion for acquittal, alleging insufficient evidence. The motion was denied and he was subsequently sentenced.

The applicable statute, § 6–2–502(a), W.S.1977 (June 1983 Replacement), provides in part:

"A person is guilty of aggravated assault and battery if he:

    *       *       *       *       *       *

"(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

"(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another * * *."

In Count I of the information, appellant was charged with stabbing Haveman, which conduct is proscribed by § 6–2–502(a)(ii); in Count II, he was charged under § 6–2–502(a)(iii) with threatening Gary Crawford and others with a machete.

Jury Instruction No. 7 stated in pertinent part:

"The necessary elements of the crime of aggravated assault and battery, as alleged in Count I, are:

"1. That the crime occurred within the County of Johnson, State of Wyoming, on or about November 27, 1984.

"2. That the Defendant did attempt to cause, or intentionally or knowingly caused bodily injury,

"3. To another, (namely, Mike Haveman),

"4. With a deadly weapon."

Jury Instruction No. 10 stated in pertinent part:

---

**1.** Howard Cosell would characterize the victim as being singularly articulate.

"The necessary elements of the crime of aggravated assault and battery, as alleged in Count II, are:

"1. That the crime occurred within the County of Johnson, State of Wyoming, on or about November 27, 1984.

"2. That the Defendant did threaten to use a drawn deadly weapon,

"3. On another, (namely, Gary Crawford and other occupants of the Buffalo Bar),

"4. Not reasonably necessary to defend his person * * *."

On numerous occasions we have addressed sufficiency of the evidence contentions and the propriety of denying a motion for judgment of acquittal. Our standard of review is not unique. In *Cutbirth v. State*, Wyo., 663 P.2d 888 (1983), we quoted with approval the well-known appellate rule as follows:

" 'The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. * * *' [Citation.]"

More recently, in *Broom v. State*, Wyo., 695 P.2d 640 (1985), we quoted with approval this same rule. Also in *Broom* we quoted with approval a standard of review in federal courts set out in *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560, 573–574, reh. denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979):

" ' * * * [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* [Citation.] This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law. (Footnotes omitted and emphasis added.)' " *Broom v. State*, supra, at 642–643.

In his attack on the sufficiency of the evidence regarding Count I, appellant says in his brief:

" * * * The victim conceded he did not know who stabbed him; it could have been either Appellant or Mr. Ayala. None of the other witnesses saw Appellant with a knife. No evidence was presented establishing that Mr. Ayala could not have stabbed Mr. Haveman at some time after Mr. Haveman threw him over his shoulder and while Mr. Haveman was carrying him out of the bar."

On cross-examination, it was not difficult for appellant's attorney to elicit from the victim answers that appeared contradictory. He answered questions about the way the examining attorney wanted them answered. In context, however, the victim, Mr. Haveman, meant he didn't see who put the knife in his back rather than he did not know who stabbed him. The only way we could see merit in appellant's argument is if the answers elicited from the victim on cross-examination were considered and his

testimony on direct ignored as well as the testimony of Ms. Turnipseed and Mr. Crawford. This is contrary to appellate rules, as we have indicated above.

 In reviewing the evidence in the light most favorable to the prosecution, we find that the evidence indicates the victim was stabbed in the back. Ms. Turnipseed saw appellant hit the victim in the back with a stab-like punch. The victim felt pain and when he turned around, he saw a blade in appellant's hand. Appellant then slashed the victim on the wrist. Ayala did not have a knife. There is an abundance of evidence from which the jury could reasonably find that appellant stabbed Haveman in the back with a knife, as charged in Count I of the information.

Appellant makes only a perfunctory argument regarding the sufficiency of the evidence in connection with Count II of the information. He says, "The State failed to show that it was not reasonable for Appellant to believe he and Mr. Ayala were being threatened by mob violence. * * *" It must be remembered that after Ms. Turnipseed felled appellant with a pool stick outside the bar, he procured a machete, apparently from his car, and ran back into the bar threatening to lop off heads. The "mob" that appellant refers to was in the bar. Appellant's theory of self-defense under the facts of this case is indeed strange. Even though three self-defense instructions were given to the jury, the jury did not accept appellant's flimsy self-defense story, nor do we. Appellant's sufficiency of the evidence issue on Count II is totally without merit. There were copious amounts of evidence to support appellant's conviction on both counts of the information.

Affirmed.