**Glenn Eddie GARCIA,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 88–205.**

Supreme Court of Wyoming.

July 13, 1989.

Leonard Munker, State Public Defender, Gerald M. Gallivan, Director, Defender Aid Program, and Brian J. Godard, Student Intern, for appellant. Argument presented by Brian J. Godard.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Paul S. Rehurek, Asst. Atty. Gen., for appellee. Argument presented by Paul S. Rehurek.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Glenn Eddie Garcia was convicted of one count of concealing stolen property in violation of W.S. 6–3–403(a)(i), one count of aggravated assault in violation of W.S. 6–2–502(a)(ii), and two counts of interference with a police officer in violation of W.S. 6–5–204(a). On appeal, he contends that he was improperly charged with concealing stolen property, that the trial court erroneously admitted evidence of his prior bad acts, and that the trial court erroneously denied his motion for acquittal.

We affirm.

Shortly before 2:30 p.m. on November 1, 1987, a dark blue 1984 Toyota Celica was stolen in Laramie, Wyoming. At approximately 10:20 p.m. that evening, Officer Bomar of the Cheyenne Police Department saw a vehicle matching the description of the stolen vehicle and, with Officer Nicholl providing backup in a separate patrol car, stopped the suspect vehicle. As the officers approached the Toyota, the driver, later identified as appellant Garcia, sped off into south Cheyenne, beginning a high speed chase that was to end nearly forty minutes later near Wellington, Colorado.

Early in the chase Officer Nicholl temporarily fell prey to appellant's evasive actions and, attempting to rejoin the pursuit, turned north onto Van Lennen Avenue with lights and sirens blaring. He quickly realized that appellant had turned off the Toyota's headlights and was headed down the wrong side of the street on a high speed collision course with his patrol vehicle. When appellant failed to move into the proper lane, Nicholl was forced to swerve off the left edge of the street to avoid the imminent collision. Shortly after this incident, Officer Bomar and the Toyota collided as the officer attempted to block appellant's escape.

As more officers became involved in the effort to contain Garcia, it became increasingly evident that he would not voluntarily abandon his flight. When Sergeant Renner attempted to intercept appellant on House Avenue, appellant entered Renner's lane and forced him into the curb. Shortly thereafter appellant proceeded into a non-incorporated portion of Laramie County and headed for I–25. As speeds increased, Officer Stone attempted to pass appellant and block his progress. Appellant looked at the officer, swerved the Toyota towards the patrol vehicle and forced Stone into a ditch. Pursuit continued through the county and south along I–25, until a member of the Colorado State Patrol finally succeeded in forcing appellant off the highway.

Appellant was arrested and brought to trial on the following charges:

COUNT 1, aggravated assault against Officer Nicholl;

COUNT 2, aggravated assault against Officer Stone;

COUNT 3, aggravated assault against Sergeant Renner;

COUNT 4, concealing stolen property of a value greater than $500.

The jury found him guilty of Counts 1 and 4 but, as to Counts 2 and 3, found him guilty only of the lesser included offense of interfering with a police officer. The trial court imposed and suspended two one-year sentences relating to Counts 2 and 3 and on

the remaining charges sentenced him to concurrent terms of four and one-half to six years in the Wyoming State Penitentiary.

## CONCEALING STOLEN PROPERTY

Prior to trial, appellant submitted a "Motion to Dismiss or for Judgment of Acquittal on Count IV." In support of that motion, he admitted that he stole the Toyota and argued that a thief could not be prosecuted for the possessory offenses of receiving or concealing stolen goods. He reiterated this position as part of a motion to acquit following the State's presentation of evidence and raises it once again on appeal. We find no merit in his argument.

■ Appellant cites much authority for the proposition that a defendant cannot be prosecuted, convicted, and sentenced both for the larceny of property and the receipt or concealment of that same property. He correctly notes that such a situation potentially offends both state and federal constitutional proscriptions against double jeopardy, in that the possessory offenses are necessarily committed when one steals property. A defendant cannot receive multiple punishments for a single offense. See generally *Howard v. State*, 762 P.2d 28 (Wyo.1988); *Schultz v. State*, 751 P.2d 367 (Wyo.1988); *Birr v. State*, 744 P.2d 1117 (Wyo.1987); *Tuggle v. State*, 733 P.2d 610 (Wyo.1987). However, appellant's argument, and the authorities cited, are inapposite here. Appellant was merely charged with concealing stolen property. No attempt was made to try or punish him for the theft of the Toyota.

■ He attempts to shore up this obvious weakness in his argument by contending that the possessory offenses of receiving and concealing were intended by the legislature to reach only a thief's accessories after the fact. He cites no cogent authority in support of this position, however, and ignores past decisions of this court suggesting a contrary conclusion. Where evidence strongly indicated the defendant's involvement in the underlying theft, we upheld his conviction for receiving and concealing stolen oil field drill bits

based on his unexplained possession of those bits. *Tageant v. State*, 673 P.2d 651 (Wyo.1983); see also *Capshaw v. State*, 737 P.2d 740 (Wyo.1987). Furthermore, we expressly rejected the argument that an admitted thief could not be charged and convicted of concealing the stolen property in *Pote v. State*, 695 P.2d 617, 622 (Wyo. 1985). If we were to adopt appellant's argument, the State would be required to offer evidence that someone other than the possessor of stolen goods committed the actual theft. This court has repeatedly rejected such a requirement. See generally *State v. Callaway*, 72 Wyo. 509, 267 P.2d 970 (1954); *Curran v. State*, 12 Wyo. 553, 76 P. 577 (1904). Appellant fails to consider that the evil which the legislature intended to address in this instance may just as well have been the mere wrongful possession and use of stolen property. The evil character of such possessory acts does not disappear when an unproved thief engages in such acts only to magically reappear when a fence or some other third party engages in similar conduct. Where the thief can be proven to have committed the lesser offense, we will not permit him to obstruct prosecution by giving partial proof of greater guilt. Appellant was properly charged and prosecuted for concealing stolen property.

Appellant's reassertion of this issue after the State's presentation of its case, however, raises the additional question of whether sufficient evidence was produced on this offense to overcome his motion for acquittal. We have frequently articulated our standard of review with respect to that question. A motion for acquittal should be denied where, viewing the evidence in the light most favorable to the State, a reasonable inference can be drawn from that evidence that the defendant is guilty beyond a reasonable doubt. The motion should be granted, however, where there is such a lack of substantial evidence such that a reasonable juror must harbor a reasonable doubt as to the existence of an essential element of the crime. *Washington v. State*, 751 P.2d 384, 386–87 (Wyo.1988); *Abeyta v. State*, 705 P.2d 330, 332 (Wyo.

1985); *Russell v. State*, 583 P.2d 690, 693–94 (Wyo.1978).

■ The elements of the offense with which appellant was charged are set forth in W.S. 6–3–403, which provides in pertinent part:

> "(a) A person who * * * conceals * * * property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:
>
> "(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both, if the value of the property is five hundred dollars ($500.00) or more."

Thus, to overcome appellant's motion, the State was required to produce evidence that, at the time and place alleged in the charging documents, appellant: (1) concealed property; (2) of a value of at least five hundred dollars; (3) with the knowledge, belief, or reasonable cause to believe that the property had been illegally obtained.

■ Appellant concealed the Toyota, for purposes of the statute, if he placed it out of the owner's sight or prevented the owner from recognizing it. However, concealment does not require an effort to disguise or hide the vehicle; it merely requires that appellant drove the vehicle away from where the owner was likely to discover it. *Hunter v. State*, 704 P.2d 713, 717–18 (Wyo.1985). Appellant's possession of the Toyota in Cheyenne, some eight hours after its theft in Laramie, is circumstantial evidence sufficient to make a prima facie showing that he concealed the car. By demonstrating that it was three years old and cost over two thousand dollars to repair, the State also provided sufficient evidence of the car's value. Finally, the State introduced considerable evidence to indicate appellant's awareness that the vehicle had been illegally obtained. Officer Zukauckas testified to appellant's admission that he took the Toyota in Laramie. The strongest possible proof that a car had been stolen and that a defendant knew that to be the case is provided by evidence of his participation in the theft. *Pote*, 695 P.2d at

622. Additionally, appellant's evasive actions provide strong circumstantial evidence of his guilty state of mind. The district court correctly denied appellant's motion to acquit with respect to the charge of concealing stolen property.

## AGGRAVATED ASSAULT

We reach a similar conclusion with respect to the motion insofar as it relates to appellant's alleged assault against Officer Nicholl. The statute under which he was charged, W.S. 6–2–502(a)(ii), provides:

> "(a) A person is guilty of aggravated assault and battery if he:
>
> * * * * * *
>
> "(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon."

Appellant contends only that the State's evidence was insufficient regarding his specific intent to cause bodily injury to Officer Nicholl. His argument relies heavily upon a superficial reading of our decision in *Fuller v. State*, 568 P.2d 900 (Wyo.1977). That argument is ill-conceived.

■ In *Fuller* we explained that, although the law presumes an individual to generally intend the natural consequences of his actions, it will not presume that he specifically intended any particular consequence. That is, a mere showing that certain conduct occurred which produced a particular result is legally sufficient to establish the actor's general intent. Thus, we explained that the bare fact of assaultive behavior will not give rise to a *presumption* that an assailant had the specific intent to cause any particular harm. *Id.* at 903–04. We also noted, however, that such specific intent may be properly proven by reasonable *inferences* from the character of such acts and their surrounding circumstances. In particular, the specifics of a defendant's conduct and other circumstantial evidence may permit the jury to infer that he acted with the specific intent to cause bodily injury. *Id.* at 904. See also *Johnston v. State*, 747 P.2d 1132, 1135–36 (Wyo.1987); *Simmons v. State*, 674 P.2d 1294, 1297 (Wyo.1984); *Brightwell v.*

*State*, 631 P.2d 1048, 1050 (Wyo.1981). In the present case, the trial court's "Jury Instruction No. 8" properly informed the jury that such inferences were permissible by stating, "[Specific intent] may be determined from all the facts and circumstances surrounding the case." Appellant correctly notes that specific intent cannot be proved by presumption but conveniently ignores the State's proof of that intent by the permissible means of inference from circumstantial evidence.

■ The transcript of appellant's trial is replete with testimony that, although apparently in full control of the Toyota, appellant repeatedly directed that potentially dangerous weapon towards a number of police officers. In each of those instances, either a collision occurred or the particular officer was forced to swerve off the roadway to avoid a collision. Additionally, Officer Zukauckas testified to a post-arrest interview, during which appellant stated that the officers were lucky he did not kill them. Viewing only the State's evidence, and in the light most favorable to the State, we find that this evidence would not necessarily cause a reasonable jury to harbor a reasonable doubt as to appellant's specific intent to cause bodily injury to Officer Nicholl. To the contrary, such a jury could reasonably infer from this evidence the existence of such intent beyond a reasonable doubt. The question is not whether other inferences would be possible. Rather, the question is whether a rational jury could possibly make this particular inference without entertaining a reasonable doubt as to the truth of the inferred fact. *Washington*, 751 P.2d at 386–87; *Abeyta*, 705 P.2d at 332–33. The district court properly denied appellant's motion for acquittal.

## PRIOR BAD ACTS

During the presentation of its case, the State attempted to introduce the testimony of Officer Swezey concerning an altercation with appellant which occurred some two years prior to the date of the charged offenses. Appellant, then fifteen or sixteen years old, allegedly struck the officer when he tried to quell a disturbance at the home of appellant's father. Appellant objected that the State was making an improper use of his prior bad acts, contrary to the dictates of W.R.E. 404(b). The trial court, however, agreed with the prosecutor that such evidence was relevant to the issue of whether appellant mistakenly, accidentally or intentionally performed the acts that formed the basis of the three counts of aggravated assault. The court, therefore, overruled appellant's objection and admitted the testimony.

Our recent decision in *Coleman v. State*, 741 P.2d 99 (Wyo.1987), provides a comprehensive outline of our position with respect to the admission of prior bad acts evidence. We noted in that decision that, while such evidence is not admissible solely to prove that a defendant possessed a particular character trait and that his present acts were a further reflection of that character, prior bad acts are admissible for certain purposes delineated by W.R.E. 404(b). We also explained that the trial court, in admitting such evidence, must perform the balancing test of W.R.E. 403, weighing the probative value of that evidence against the probability that it will unfairly prejudice or mislead the jury. *Id.* at 102.

■ As a means of aiding the district courts in their analysis of the Rule 404(b) problem, we set forth a number of factors to be considered in determining the admissibility of prior bad acts. Many of those factors were initially adopted from *United States v. Myers*, 550 F.2d 1036, 42 A.L.R. Fed. 855 (5th Cir.1977), in *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984). They are:

1. The extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes.

2. The remoteness in time of those crimes from the charged offense.

3. The extent to which the evidence of other crimes is introduced for a purpose sanctioned by W.R.E. 404(b).

4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue.

5. The extent to which the prosecution has a substantial need for the probative value of the evidence of other crimes.

Additionally, we adopted the following approach as set out in C. McCormick, *McCormick on Evidence* § 190 at 565 (3d ed. 1984):

"In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse a jury to overmastering hostility." *Coleman,* 741 P.2d at 104.

■ On review, this court gives considerable deference to the trial court's discretionary balancing of these factors and its determination that the probative value of the prior bad acts outweighs its potential to unfairly prejudice the jury. *Id.* at 103–06. Thus, we will not reverse the trial court's decision if its alleged error was harmless. We must be convinced a reasonable possibility exists that, had the evidence been excluded, the jury's verdict would have been more favorable to the appellant. *Bishop,* 687 P.2d at 246–47; *Stambaugh v. State,* 613 P.2d 1237, 1240 (Wyo.1980). Such is not the case here.

The State introduced a substantial amount of circumstantial evidence probative of appellant's intent to cause bodily injury to three officers. Those officers testified that on each occasion appellant sped toward them, making a dangerous collision inevitable had the officers not taken sudden evasive actions. In each instance, they testified to their belief that both appellant's actions and their own responses necessitated by those actions created a serious risk that they would suffer bodily injury. Additionally, evidence was introduced of appellant's post-arrest statements in which he expressed extreme hostility towards the officers who pursued him.

While this evidence does not overwhelmingly establish appellant's intent to cause bodily harm, it is sufficient to convince us that appellant was not convicted because of his prior bad acts. An examination of the probative and prejudicial strength of the prior bad acts evidence, when considered against the jury's actual decision concerning the three related assault charges, adds even further certainty to that conclusion. Though appellant's assault on Officer Swezey was indeed relevant to his intent in the present case, the logical tendency of the former act to establish present intent is at best highly attenuated. The same can be said of its tendency to cause unfair prejudice. The actions of a fifteen year old boy defending his father, even from the legitimate exercise of police authority, cannot be said to be so inflammatory as to override the obvious perception that the events have little in common. Were we to assert that the jury had become so inflamed, we would be at a loss to explain why it was moved to find that appellant intended to injure only Officer Nicholl. That a similar intent was not found with respect to Officers Stone and Renner convinces us that something other than prejudice motivated the jury's verdict.

The record reveals that the jury could easily have distinguished the incidents involving Stone and Renner from the near collision with Nicholl. When appellant, with his lights off but under full control of the vehicle, bore down on Officer Nicholl, the officer was not immediately aware of his presence and was seeking only to avoid appellant. Both Stone and Nicholl, however, were affirmatively attempting to block appellant's progress at a time when appellant was allegedly trying to negotiate or recover from a high speed turn. The jury could rationally conclude that, in these latter instances, the actions of the police officers contributed every bit as much to the creation of a hazard as did appellant's actions.

■ We cannot, and need not, determine whether the jury analyzed the facts of this case in such a manner. We only note that properly admitted evidence supports and harmonizes a verdict which would appear inconsistent if motivated solely by prejudice. We are therefore con-

vinced that the jury was not unduly or unfairly influenced by the introduction of appellant's prior bad acts, and that it properly decided this case on the evidence which was properly before it. If there was error in this regard (we do not say there was), it was undoubtedly harmless.

Affirmed.

URBIGKIT, J., filed an opinion concurring in part and dissenting in part.

URBIGKIT, Justice, concurring in part and dissenting in part.

I concur in affirming the conviction of Glenn Eddie Garcia (Garcia), age eighteen, for aggravated assault as well as interference with a police officer. These charges resulted from his conduct with a motor vehicle which endangered the police officer, the general public, his automobile passengers and, of course, himself. Differing, however, as to the concealing stolen property charge, I dissent in that conviction and would reverse that count.

According to the appellate record, Garcia stole a 1984 dark-blue Toyota Celica in Laramie, Wyoming mid-afternoon on November 1, 1987, after which he purchased gasoline in Laramie, drove to Fort Collins, Colorado, purchased more gasoline and then came to Cheyenne, Wyoming. Local police, following an alert by an all points bulletin, observed the vehicle on the city streets and took up the chase. Nothing about Garcia's activities showed an effort to conceal. Garcia had picked up his fiancee and two other passengers in Cheyenne and then engaged in a course of in-town driving. The vehicle, for ease of identification, had a Wyoming license plate, was dark-blue in color and easily distinctive in model. I fail to find in these events and appellate record any sufficient evidence of concealing stolen property. We are presented with a course of behavior revealing Garcia's macho character by his driving around Cheyenne in the illegally taken, very identifiable automobile.[1] *Hunter v. State*, 704 P.2d 713 (Wyo.1985), to the contrary, Garcia simply did not conceal the stolen property. This count within the total charges and concurrent sentences given will hopefully, at least for now, not make any difference for Garcia as he is called to task for his other very serious criminal misconduct. *Cf.* W.S. 6-10-201 (habitual criminal statute exposure if any further offenses should be a crime of violence). It is to be noted, however, that if the Laramie offense was joyriding, W.S. 31-11-102, and not larceny, W.S. 6-3-402, it would be only a misdemeanor while the concealment charge, W.S. 6-3-403, is a maximum ten year felony. *See Engle v. State*, 774 P.2d 1303 (Wyo.1989).

I would have preferred to have avoided these inquiries in dissent by application of the concurrent sentence doctrine. *Driskill v. State*, 761 P.2d 980 (Wyo.1988). *See* Emanuel, *The Concurrent Sentence Doctrine Dies a Quiet Death—Or Are the Reports Greatly Exaggerated?*, 16 Fla.St. U.L.Rev. 269 (1988). Nevertheless, since neither Garcia nor the State wish to discuss a question of why this concurrent sentence really matters, substantive consideration remains necessary for this issue of law of major significance in Wyoming criminal justice precedent.

For Garcia, the act conceptualized into a concealing stolen property offense for trial in Laramie County, Wyoming is substituted for the actual offense of felony larceny or misdemeanor joyriding committed in Albany County. In that process, we create what is not so as to be something by a mirage of language. Garcia did everything but conceal that dark-blue, 1984 Wyoming licensed Toyota Celica and, in concurring with the appropriate conviction of the offenses for what he did do, I would not convict him of what he obviously did not do. My concern is not the double jeopardy

---

1. The record also reveals different explanations of different passengers as to how he got the car, but to none that it was stolen until he tried to escape when spotted by the police. This case does tell "the rest of the story" which is unfortunately missing from television and movie exploitation of hot rod driving and police chase escapes as a world of fantasy and non-described risk. *See also Coryell v. Town of Pinedale*, 745 P.2d 883 (Wyo.1987) (Urbigkit, J., specially concurring). Joyriding can end up to be attempted or committed homicide.

question of two convictions for the same offense, it is in the creation of an independently conceived and necessarily corollary duplicate offense for every occurrence of larceny. *Jackson v. Com.*, 670 S.W.2d 828 (Ky.1984), *cert. denied* 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 784 (1985).

In historical perspective, it is apparent that the ancestors of the receiving, concealing and disposing statute, now W.S. 6–3–403,[2] was initially adopted as a third-party crime to augment the first-party offense of larceny currently provided in W.S. 6–3–402.[3] See in historical perspective the original Wyoming statute, 1890 Wyo. Sess. Laws ch. 73.[4]

From there, statutory construction has clouded original intent despite the continued recognition that the thief could also not be guilty of receiving. This result has occurred by further implication that an offense could exist of concealment or disposition as a first-party crime. The adaptation was not without resistance, but this court took the concept to ultimate application in *Hunter*, 704 P.2d 713 by conclusion that in driving out of Michigan in a stolen car, a concealing offense occurred in stopping to ask directions from police in Laramie, Wyoming.

**2.** W.S. 6–3–403 states:

   (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:
   (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more; or

\* \* \* \* \* \*

   (b) A person may be indicted under this section in the county where he received or possessed the property, notwithstanding the wrongful taking occurred in another county.

**3.** W.S. 6–3–402 states in part:

   (a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.
   (b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

This historical process of judicial legislating to cover expanded areas of conviction has viable precedent, but the majority now accommodates an extension that is not justified in history, language or existent case law. Where concealment has been expanded to the thief as a first-person, not third-person offense, the case law has required a discrete offense as subsequent in time to the initial larceny for separation from the initial principal offense. That consonant is missing in the present expansion of a criminal offense to cover a joyriding offense as a concealment crime. Here, undoubtedly, if Garcia had been somewhat more careful in publicly driving the stolen vehicle around Cheyenne, he would either have had the opportunity to return to Laramie or abandon the vehicle in Cheyenne.

Within the extensive national case law, *Hunter* reaches the outer limits of criminal conviction justification; permitting, however, an accommodation to be made for this case which still denies present affirmation. Missing for any comparable acceptability, even where the conjunctive offenses can be impressed upon the original thief, are facts sufficiently removed to create a separate or discrete criminal offense arising from do-

\* \* \* \* \* \*

   (d) Conduct denoted larceny in this section constitutes a single offense embracing the separate crimes formerly known as larceny, larceny by bailee or embezzlement.

**4.** Section 39 of 1890 Wyo. Sess. Laws ch. 73 states:

   Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of twenty-five dollars or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten years.

Section 41 of 1890 Wyo. Sess. Laws ch. 73 states:

   Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, taken by robbers, embezzled or obtained by false pretense, knowing the same to have been stolen, taken by robbers, embezzled or obtained by false pretense, shall, if the goods are of the value of twenty-five dollars or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than twenty-five dollars, shall suffer the punishment prescribed for petit larceny.

ing something more than committing the original larceny. Initial instruction is provided by the early Wyoming case of *Curran v. State*, 12 Wyo. 553, 76 P. 577 (1904) and the superintending constitutional analysis of *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). The perceptive interpretation of Justice Frankfurter, although in dissent in *Milanovich*, has irreversibly set the standard for application of a second offense chargeable to the thief after completion of the larceny:

> It is hornbook law that a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen. *E. g., Cartwright v. United States*, 146 F.2d 133; *State v. Tindall*, 213 S.C. 484, 50 S.E.2d 188; see 2 Wharton, Criminal Law and Procedure, § 576; 136 A.L.R. 1087. And this is so for the commonsensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken. In short, taking and receiving, as a contemporaneous—indeed a coincidental—phenomenon, constitute one transaction in life and, therefore, not two transactions in law. It also may well be that a person who does not himself take but is a contemporaneous participant as an aider and abettor in the taking is also a participant in a single transaction and therefore has committed but a single offense. *Regina v. Coggins*, 12 Cox C.C. 517; *Regina v. Perkins*, 2 Den. C.C. 458, 169 Eng.Rep. 582; *Rex v. Owen*, 1 Moody C.C. 96, 168 Eng.Rep. 1200. In such a case, the jury must be told that the taking and receiving, being but a single transaction, constitute, of course, only one crime. See *Commonwealth v. Haskins*, 128 Mass. 60. (This, of course, does not bar Congress from outlawing and punishing as separate offenses the severable ingredients of one compound transaction. See *Gore v. United States*, 357 U.S. 386 [78 S.Ct. 1280, 2 L.Ed.2d 1405].)

The case before us presents a totally different situation—not a coincidental or even a contemporaneous transaction, in the loosest conception of contemporanei-ty. Here we have two clearly severed transactions. The case against the defendant—and the only case—presented two behaviors or transactions by defendant clearly and decisively separated in time and in will. The intervening seventeen days between defendant's accessorial share in the theft and her conduct as a recipient left the amplest opportunities for events outside her control to frustrate her hope of sharing in the booty, or ample time for her to change her criminal purpose and avail herself of a *locus poenitentiae*. Two larcenies, separated in time, would not be merged * * *.

*Milanovich*, 365 U.S. at 558–59, 81 S.Ct. at 731–32 (Frankfurter, J., dissenting).

It is in the absence of a lapse of time during one joyriding episode during an afternoon and evening activity by continuing to use the stolen Toyota Celica that this decision of the majority is faulty in persuasion and legal perspective in extracting a concealment offense. In order to recognize the attributes of this judicially created offense, it is necessary to observe that the character of conduct within the single statute has come to be differentiated where commonly including a choice of receipt, concealment or disposition. It was first factually obvious that the receiving could not create a second offense if the thief was the only actor. As a singular number of cases recite, a person cannot receive from himself where the larcenous conduct affixed the original possession for him. However, the ingenuity of effort of the courts to affirm convictions and ease venue choice problems in conviction came to recognize that there could be a theory of a separate event as a second crime by either concealment or property disposition. This application abandons the historical concept that the original statutes (often more severe in punishment than larceny) were directed at the fence or marketer in crime.

*Curran* fits within this perspective. In that case, there was no certain proof that the defendant participated in the original theft, although thereafter contributing in crime by receipt of the merchandise from an unproved source who was, in fact, ap-

parently a coworker who had pleaded guilty. The second offense status of receipt and concealment was established and proof of the original theft was not required. Curran was convicted of being a guilty receiver so that in a prosecution against a receiver the name of the thief is immaterial. *Curran*, 12 Wyo. at 572, 76 P. 577. The material facts for that case were (1) receipt (2) of goods that had been stolen and (3) knowing them to have been stolen. This resolution is not in conflict with *Milanovich*, but specifically falls within the Frankfurter second-offense criteria. The obvious differentiation here between Garcia's conviction and Hunter's offense is time and geography sufficient to extrapolate out another or second crime instead of one joyriding sequence.

To apprehend any logic in this progression, we should first understand the initial third-party conduct determinant of these receiving, concealing and disposing statutes and then apply the majority and dissent in *Milanovich* to define the redirection achieved. The basic point of non-application of a crime to the thief "receiving from himself," *Milanovich*, 365 U.S. at 552, 81 S.Ct. at 729, was conclusively stated and comprehensively supported in Annotation, *May Participant in Larceny or Theft Be Convicted of Offenses of Receiving or Concealing the Stolen Property?*, 136 A.L.R. 1087, 1088 (1942), which states that "[i]t is an elementary principle of law that the principal in a theft, or the person who actually steals the property, cannot be convicted of the crime of receiving, concealing, or aiding in the concealment of the property stolen." Included within the more than 100 cases cited in that annotation and its succeeding update services, are *Milanovich*, 365 U.S. 551, 81 S.Ct. 728; *United States v. Casey*, 540 F.2d 811 (5th Cir. 1976); *Leon v. State*, 21 Ariz. 418, 189 P. 433 (1920); *People v. Jackson*, 78 Cal. App.3d 533, 144 Cal.Rptr. 199 (1978); *People v. Jaramillo*, 16 Cal.3d 752, 129 Cal. Rptr. 306, 548 P.2d 706 (1976); *People v. Tatum*, 209 Cal.App.2d 179, 25 Cal.Rptr. 832 (1962); *Duncan v. State*, 503 So.2d 443 (Fla.App.1987); *People v. Feinberg*, 237 Ill. 348, 86 N.E. 584 (1908); *State v. Alvarez*, 9

Kan.App.2d 371, 678 P.2d 1132 (1984); *Com. v. McCann*, 16 Mass.App. 990, 454 N.E.2d 497 (1983); *State v. Hines*, 354 N.W.2d 91 (Minn.App.1984); and *State v. Hancock*, 44 Wash.App. 297, 721 P.2d 1006 (1986). This rule is comprehensively and decisively settled that where a larceny has been committed, the principal thief, that is the one who is guilty of the actual taking, cannot be adjudged guilty of criminally receiving the stolen goods for the reason that the thief cannot receive from himself. *See Leon*, 189 P. at 434. *See also* W. LaFave & A. Scott, Criminal Law § 93 at 681 (1972).

Further analysis is then required to follow what is best described as the discrete—differentiated offense flowing from the concealment or disposition function of the post-larceny possession statutes such as W.S. 6-3-403(a). Within this concept as was advanced by Justice Frankfurter in *Milanovich*, it is apparent that transitionally severed occurrences as separated in time and in will are required to create a basis for conviction of the thief for a second offense. *Milanovich*, 365 U.S. at 559, 81 S.Ct. at 732. Initially related to the offense or a third-party, see discussion in *Jackson*, 144 Cal.Rptr. 199 and *Jaramillo*, 548 P.2d 706.

This adaptation developed to ensnare the initial thief for commission of a second offense against the property invokes establishment of that follow-on or separable offense. It is in accord with the conduct of *Hunter* in driving from Michigan away from the owner and police of that state to Wyoming, that justification in policy and precedent exists. *Hunter* only goes as far as it goes, and *Pote v. State*, 695 P.2d 617 (Wyo.1985) extends no further in support of what this majority now attempts to do to affirm. In *Pote*, the concealed car and guns had been acquired by larcenous conduct of persons not clearly determined sometime earlier in Washington and Oregon. Whatever those discrete offenses may have first been, they ended with completion of the thievery at that geographically far removed location and the new offense occurred in Park County, Wyoming

by the secretion of the stolen property at the cabin when occupied by the criminals in attempted escape from the bar room shoot out in Cody, Wyoming.

In *Hunter*, the Laramie, Wyoming offense was different from the original taking. In *Pote*, there was certainly a different course of criminal conduct. *Curran* also adds no support since the essence of that case clearly demonstrated that Curran was not the initial thief from the Union Pacific Railroad Company but rather a guilty receiver. Proof of identity of the original thief was not required for conviction of the crime of receipt. The differentiation between an accessory offense and the substantive felony is clearly identified. *See State v. Tageant*, 673 P.2d 651 (Wyo. 1983), where the only appellate issue was knowledge of the stolen character of the merchandise. That issue does not offend the discrete offense requirement for second conviction which is this appellate issue.

In broad perspective, the only issue at task in development of a definable and consistent legal theory which retains logic and rejects fantasy of a philosophic bent to confirm conviction is what conduct is intrinsic to the original offense in its continuing nature and what conduct is separate and discrete as an additional offense. Conduct of selling stolen property is easy to identify; but retaining for a period of time embraces questions of further defined conduct or intent to produce the second crime after the original theft. *Tageant* was of the first class involving admitted resale. *Hunter* was the second conception. We now face Garcia which embraces only one continuous joyriding episode.

In addition to the dual event thesis to be derived from the somewhat recent *Milanovich* case, a course of development accommodating the discrete offense differentiation as a definable progression of the law can be ascertained from a course of other cases. The basic original cases include *Byrd v. State*, 117 Tex.Cr. 489, 38 S.W.2d 332 (1931). *See also Jaramillo*, 548 P.2d 706; *State v. Weiner*, 84 Conn. 411, 80 A. 198 (1911); *State v. Ward*, 40 Conn. 429 (1881); *Wertheimer & Goldberg v. State*,

201 Ind. 572, 169 N.E. 40 (1929); *Com. v. Matheson*, 328 Mass. 371, 103 N.E.2d 714 (1952); *People v. Harris*, 53 N.W. 780 (Mich.1892); and Recent Case, *Criminal Law—Receiving Stolen Property.—[Texas]*, 27 Ill.L.Rev. 207 (1932). *Jaramillo* involved driving a stolen vehicle, where the car was stolen in San Diego in August 1972 and about twelve days later, the defendant was found driving the car in Van Nuys, California. Jaramillo was charged with both theft and receiving and was convicted of both. The Supreme Court of California reversed by leaving an option for retrial or reinstatement of the conviction only on receiving.

The Michigan court in *Harris*, 53 N.W. 780 dealt with charges of both stealing and concealing the horse. The court affirmed the count of conviction for concealment on trial proof that Harris was not in the vicinity when the horse was abducted. The separate offense existed for which Harris was properly convicted. In *Byrd*, 38 S.W.2d 332, the issue was whether the evidence had proven a case of theft and not one of receiving stolen property for which defendant was convicted. The contemporaneous nature of the facts defined Byrd as a principal in theft and "being a principal to the theft, he cannot be guilty of the crime of knowingly receiving said stolen cattle, and can only be convicted of the offense of which the evidence shows him guilty, and for this reason the judgment of the trial court cannot be sustained." *Id.* at 334.

In *Com. v. Kuperstein*, 207 Mass. 25, 92 N.E. 1008, 1009 (1910), it was questioned whether defendant aided in getting the cloth disposed so that it might find its way into the ordinary channels of trade, and by being commingled with the general merchandise of the country, lose the marks of identity as stolen property. This might be effective aid in its concealment. See similarly in question *Harris*, 53 N.W. 780. In *Matheson*, 103 N.E.2d at 714, defendant aided in the concealment of the stolen goods knowing them to have been stolen. In *State v. Moynahan*, 164 Conn. 560, 325 A.2d 199, *cert. denied* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973), the deputy superintendent of police acquired and dis-

posed of a stolen television set. That case recognizes that a third party, upon acquisition of known stolen property, conceals it criminally if he does not return it and conversely converts it to his own use involving affirmative prescribed conduct not related to initial theft. *See likewise State v. Pambianchi,* 139 Conn. 543, 95 A.2d 695 (1953). The word "conceals" ordinarily implies design or purpose. *Norton v. State,* 119 Neb. 588, 230 N.W. 438 (1930). The conduct becomes a substantive crime separate from just theft. *See also United States v. Pichany,* 490 F.2d 1073 (7th Cir.1973) and *State v. Conklin,* 153 Iowa 216, 133 N.W. 119 (1911). In *Lindsey v. Com.,* 383 S.W.2d 333 (Ky.1964), after admission of initial theft, the receiving charge was dismissed and defendant was promptly recharged and convicted on the theft as a differentiated transaction from the original receiving charge. *See also Tramnell v. State,* 511 S.W.2d 951 (Tex.Cr.App.1974).

Analysis of the case law provides relevant tests for facts adjudicatively sufficient to show the differentiated or discrete offense of concealing or disposing which will escape the confinement of the one offense crime for a single theft. The near unanimous case law, except in two cases of the recent innovation of an alternative venue statute,[5] delineates required proof of a successive separate offense.

What conduct of the thief is sufficient to create the second offense responsibility for what he does with the property after the initial act of borrowing or stealing, e.g., taking and removal (driving away)? In *Jackson,* 144 Cal.Rptr. 199, acquisition and retention for resale as one transaction did not invoke application of receiving, concealing and withholding as an additional or different crime. *Tatum,* 25 Cal.Rptr. 832 presented a house trailer stolen in Lancaster, California on November 7 and located three days later parked in Moorpark, Cali-

fornia. Defendant was tried and acquitted of theft for the original taking and then charged in Ventura County with concealing. That court said:

> We conclude that, in the absence of facts indicating a complete divorcement of the concealing activities from the course of conduct of the thief in the initial concealing of the property stolen by him, a thief may not be found guilty of concealment in violation of section 496(1). (Accord: *People v. Daghita,* 301 N.Y. 223, 93 N.E.2d 649.) In the instant case a review of the testimony reveals there was no evidence of concealment independent of that involved in the theft. In the absence of such evidence it was error to instruct the jury that they could find defendant guilty of concealment even though they believed he had stolen the trailer.

> Had there been evidence of acts of concealment entirely separate and apart from the theft and sufficiently removed therefrom to constitute an independent course of conduct, then an instruction which clearly spelled out such distinction could properly have been given.

*Id.* 25 Cal.Rptr. at 835. Similarly postured in California law are *People v. Marquez,* 237 Cal.App.2d 627, 47 Cal.Rptr. 166 (1965), *disapproved on other bases sub nom. People v. Ramirez,* 668 P.2d 761, 767 (Cal. 1983) and *Williams v. Superior Court of Los Angeles County,* 81 Cal.App.3d 330, 146 Cal.Rptr. 311 (1978). In the latter case, in comprehensive review, the defendant attorneys lost the challenge to charges against them for receiving and concealing when they surreptitiously obtained an insurance company's investigative file which was then used to solicit clients and achieve a large personal injury settlement. They were not innocent acquirers. In *State v. Para,* 120 Ariz. 26, 583 P.2d 1346, 1349–50 (1978), the court faced a

---

**5.** There are two cases based on recent state statutes which affirmatively find a separate offense of possession of stolen property at time of arrest no matter how related in time or activity to the earlier theft. *See Sutton v. Com.,* 623 S.W.2d 879 (Ky.1981) and *People v. Hastings,* 422 Mich. 267, 373 N.W.2d 533 (1985). These

statutes actually create an alternative but not a double offense exposure by creation of *a possession offense. See Jackson,* 670 S.W.2d 828 and *Phillips v. Com.,* 679 S.W.2d 235 (Ky.1984), holding that dual prosecution is inappropriate since the offenses merged.

course of action not proved to have been originally a theft but a later retention of whether the

> "acts of concealment entirely separate and apart from the theft and sufficiently removed therefrom to constitute an independent course of conduct." *People v. Tatum*, 209 Cal.App.2d 179, 185, 25 Cal. Rptr. 832, 835 (1962). We believe the rule stated by the California courts is applicable to our statute. Thus, in order to return a verdict of guilty, the jury had to find (1) that appellant stole the horses by possessing or concealing them when he knew they were not his, and (2) that appellant committed further acts of possession or concealment. The evidence was sufficient to present a jury question on this issue.

Based on inadequate instructions, the conviction was reversed.

The Oregon court adduced the same rule for application of initial theft and subsequent removal to a disassociated rural location "to a deserted area and concealed the [stolen] meters under some trees and stumps." *State v. Carlton*, 233 Or. 296, 378 P.2d 557, 557 (1963). That court said in analysis:

> The keystone of the defense's contention is the proposition that a thief cannot be convicted of *receiving* stolen property when the property *received* is the selfsame property which he stole. The state concedes this proposition. It is without contradiction. 2 Wharton, Criminal Law and Procedure (Anderson), § 576. This proposition is based upon the logical reason that one cannot receive something from one's self. Here, however, the court convicted Carlton of *concealing* stolen property. The court stated it was not necessary to decide whether or not the defendant was also guilty of *receiving* stolen property.

> Once this distinction is comprehended, that defendant was convicted of concealing, not receiving, stolen property, it is apparent that the logical barrier, one cannot receive from one's self, has no materiality. This then becomes a commonplace situation. The defendant engaged

in a criminal transaction, or course of conduct. He stole meters; he carried them off; and he concealed them. The state selected one part of this transaction which constituted the crime of concealing stolen property and the defendant was convicted of such crime. The defendant is contending that he cannot be convicted of concealing the stolen property because the state could have convicted him of a different crime involving the first part of the transaction, i.e., stealing or larceny. The fact that one transaction embodies facts constituting two crimes and the state chooses to prosecute for one rather than the other cannot avail defendant, unless the existence of one crime precludes the other. Proving larceny precludes establishment of receiving, but not concealing.

*Id.* 378 P.2d at 557 (emphasis in original).

The Washington case, *Hancock*, 721 P.2d 1006, is distinguishable in application of similar facts from the Oregon case but follows the same perception in denial of the second offense of possession where the miscreant held the stolen cheese until a sale could be obtained. The Washington court reversed the second conviction on the basis that only one offense had occurred. Taking the cheese to a barn for three weeks was not sufficient to create a second criminal offense of concealment following the original theft. *See also Alvarez*, 678 P.2d 1132, where the differentiated offense charge created a venue question for a doubled crime claim. The truck was stolen in McPherson County, Kansas and found with defendant in Segwick County, Kansas. The court determined that McPherson County venue did not permit complaint amendment to charge a crime committed in another county involving receipt of stolen property.

Attuned to this two-offense criteria is *State v. Larocco*, 742 P.2d 89 (Utah App. 1987), *cert. granted* 765 P.2d 1277 (Utah 1988), where the theft of the automobile occurred in 1981 and both concealment with possession and use continued for the next four years. The Utah court affirmed theft for the original crime and possession by conclusion that "[t]he crime of theft by no

means includes retention and possession of the stolen goods for a period in excess of four years." *Id.* at 97. That case provided justification in broader perspective than did our decision in *Hunter.* In *State v. Ellerbe,* 217 La. 639, 47 So.2d 30 (1950), the court opined that pigs which were obtained illegally in Franklin Parish, Louisiana and then taken to Caldwell Parish, Louisiana where the defendant resided did not create an offense of receiving stolen property separately in his home parish where the receiving offense had been committed elsewhere. That case is to be compared with the later case of *State v. Crum,* 255 La. 60, 229 So.2d 700 (1969), where the motor vehicle was stolen in Mississippi and then taken to New Orleans and used in a robbery. Concealment was found for a criminal offense. Attendant circumstances were considered and found as

> [t]he commingling of a stolen automobile with other vehicles on the public thoroughfares of a city foreign to and removed from the owner is an effective hinderance to the owner's discovery of it.
>
> We conclude that the removal of the automobile by Crum and Smith from Mississippi to Louisiana, and more particularly into the populous City of New Orleans, and their use of it for their own purposes and benefit were calculated to hinder or prevent the owner's discovery and recovery of it, and constitute "concealing" within the statute.

*Id.* 229 So.2d at 701.

It is apparent that a singular difference exists between taking a car from Mississippi to the large metropolitan of New Orleans when compared with joyriding around the Laramie, Fort Collins, and Cheyenne areas at a distance from original taking of approximately forty-five miles. Factually similar to this case and precedentially influential in reasoning is the Fifth Circuit Court of Appeals opinion in *Casey,* 540 F.2d 811, where the automobile was stolen in Alabama and shortly thereafter found as occupied by defendant in Georgia. At issue was a concealment charge. That court observed:

> Although the term "conceal" as used in [federal law] is not limited to physical-

ly secreting the vehicle, all of the cases which have found sufficient evidence to sustain a conviction for concealment have involved some overt physical act on the part of the Defendant. For example, this Circuit, as others, has held that acts such as altering title papers, changing vehicle identification numbers, changing license plates, or making false statements on title applications, fall within the broad definition of the term.

> The difference between oral deception and physical deception is a distinction with a difference under [federal law]. All of the overt physical acts in other cases affirming [federal law] convictions operated in some sense to conceal the stolen vehicle as well as to conceal the crime. Changing a car's license plates, like painting it a different color, is a deliberate and premeditated physical attempt to disguise the vehicle—to make it seem to be one other than the one which was stolen. A spontaneous verbal denial that one has stolen the car one is driving simply does not rise to this level of "concealment." The stolen vehicle is there, in its original form, for all the world to see—through verbalization, the miscreant can only hope to conceal the fact that a crime has occurred.

*Id.* at 815 (footnotes omitted).

It is my reasoned conclusion by following the general concept of the law, that Garcia's activities did not provide sufficient evidence to justify his conviction for a post-theft offense of the felony of concealment under W.S. 6–3–403. He did not conceal and should not be convicted of what he did not do. These facts do not justify that judicial expansion by slight of phrase to result in making any taking into a two-crime offense. The logical result is to create a conclusive presumption that if you steal, you conceal, and effectively repeals the joyriding misdemeanor statute. *Cf. Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

I respectfully concur in affirming the conviction of Glenn Eddie Garcia for aggravated assault as well as interference with a police officer, but dissent as to the conceal-

ing stolen property charge and would re-
verse conviction on that count.